**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2091
_____

ASHISH SUNUWAR,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A065-184-944)
Immigration Judge: John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
January 26, 2021

Before: RESTREPO, BIBAS, and PORTER,
*Circuit Judges*.

(Filed: February 25, 2021)
_____

Anser Ahmad
Ahmad & Associates
6888 Elm Street, Suite 101
McLean, VA 22101

*Counsel for Petitioner Ashish Sunuwar*

Lindsay B. Glauner
Imran R. Zaidi
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent Attorney General*
*United States of America*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Ashish Sunuwar immigrated to the United States from Nepal in 2017. On the night of July 2, 2018, he beat and strangled his wife, Rima Sunuwar.[1] Sunuwar was ultimately convicted of strangulation and contempt for violating a protection-from-abuse order. The Department of Homeland Security ("DHS") initiated removal proceedings.

---

[1] For clarity, references to "Sunuwar" refer to the petitioner, and references to "Rima" refer to the petitioner's wife.

Sunuwar contested the DHS's charges of removability and, as relief from removal, sought asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding and deferral of removal under the Convention Against Torture ("CAT"). Sunuwar did not prevail. The agency (1) determined that Sunuwar is deportable; (2) determined that he committed a particularly serious crime that disqualifies him from all forms of relief except deferral of removal under the CAT; and (3) denied him deferral of removal under the CAT based on an adverse credibility finding.

Sunuwar petitions for review, challenging these three aspects of the agency's decision. We conclude that there was no error in the deportability and particularly serious crime determinations, and that the agency's adverse credibility finding is supported by substantial evidence. So we will deny the petition.

**I**

**A**

In 2017, Sunuwar was admitted to the United States as a lawful permanent resident based on a diversity visa. On July 3, 2018, he was arrested and charged with first-degree aggravated assault, first-degree strangulation, and terroristic threats in the Court of Common Pleas of Dauphin County, Pennsylvania. The criminal complaint included an affidavit of probable cause prepared by Officer Blake Iorio, who was dispatched to the Sunuwar residence on the morning of the arrest.

According to the affidavit of probable cause, Officer Iorio observed that Rima had multiple injuries, including a "swollen and completely bloodshot" eye, "multiple large

3

bruises on both her arms and knees," additional "bruising around her neck," and "scratch marks on her chin." A.R. 405. Rima told Officer Iorio that Sunuwar continually beat her throughout the night with his fists and a wooden stick. At one point, Sunuwar dragged Rima from the living room to the bedroom, pushed her up against a wall and started to choke her with his hands. He took Rima's cell phone and jammed it into her mouth, causing her to bleed. When Rima tried to scream, Sunuwar removed her shirt and shoved it down her throat. Sunuwar then dragged Rima into a closet and struck her head against a shelf until she lost consciousness. When she revived, he held a kitchen knife to her throat and vowed to kill her if she went to the police.

The day of Sunuwar's arrest, Rima filed a petition for emergency relief from abuse. She alleged that Sunuwar had beaten her repeatedly over the previous six weeks, including when she refused his sexual advances. The Dauphin County Night Court issued an order granting emergency protection from abuse that same day. The protection order required Sunuwar to, among other things, refrain from "abusing," "harassing," or "contacting" Rima. A.R. 437.

Sunuwar later pleaded guilty to contempt under 23 Pa. Cons. Stat. § 6114(a) for disobeying the protection order. The affidavit of probable cause in support of this charge stated that Sunuwar sent four letters to Rima from detention, including one written on the back of a notice served on Sunuwar stating the conditions of the order.

In May 2019, Sunuwar pleaded guilty to first-degree strangulation under 18 Pa. Cons. Stat. § 2718(a) for his attack on his wife. He was sentenced to a term of imprisonment of 11.5 to 23 months. Section 2718(a) prohibits "knowingly or

4

intentionally imped[ing] the breathing or circulation of the blood of another person by: (1) applying pressure to the throat or neck; or (2) blocking the nose and mouth of the person." As relevant here, a strangulation offense is classified as a felony in the first degree if the defendant was under an active protection order at the time of the offense or used an instrument of crime in committing the offense. 18 Pa. Cons. Stat. § 2718(d)(3).

**B**

The DHS placed Sunuwar in removal proceedings. The DHS alleged that Sunuwar had been convicted of strangulation, and that a court determined that he violated part of an order involving protection against credible threats of violence, repeated harassment, or bodily injury to the person for whom the order was issued. Based on this conduct, the DHS charged Sunuwar with removability as an alien who was convicted of an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), a crime of domestic violence, *see id.* § 1227(a)(2)(E)(i), and a crime involving moral turpitude, *see id.* § 1227(a)(2)(A)(i), and as an alien who was found to have violated a protection order, *see id.* § 1227(a)(2)(E)(ii).

Sunuwar denied the removability charges. As relief from removal, he applied for asylum, withholding of removal under the INA, and CAT protection.[2] He alleged in his appli-

---

[2] To be eligible for a discretionary grant of asylum, an alien must demonstrate that he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."

5

cation that, if he were deported, "[t]he Maoist party [in Nepal] would try to recruit [him] because they are at war with Nepal and if [he] did not join them [he] would be kidnapped, tortured or killed." A.R. 329. He did not allege that he had experienced any past harm in Nepal.

## C

Sunuwar testified before an immigration judge ("IJ") in support of his application. At the outset of the hearing, he amended his application to change the answer from "no" to "yes" in response to whether he had previously been harmed or mistreated in Nepal, but still did not specifically identify or describe any past harm. Sunuwar testified that, when he was about thirteen or fourteen years old (which would have been around 2006 or 2007), he was kidnapped by Maoists and held

---

8 U.S.C. § 1101(a)(42)(A); *see also id.* § 1158(b); *A.A. v. Att'y Gen.*, 973 F.3d 171, 177 (3d Cir. 2020).

To be granted withholding of removal under the INA, an alien must meet the heavier burden of demonstrating a clear probability of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion if he is removed. *See* 8 U.S.C. § 1231(b)(3)(A); *A.A.*, 973 F.3d at 177.

To qualify for CAT protection, an alien must demonstrate that it is more likely than not that he will be subjected to "torture," "an extreme form of cruel and inhuman treatment," upon return to the proposed country of removal. 8 C.F.R. § 1208.18(a)(2); *see also id.* §§ 1208.16(c)(2), 1208.17(a); *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017).

6

for three days, during which time he was stabbed twice in the stomach. He further testified that the Maoists told him that Nepal was at war and that he was required to help them fight, but that he was thereafter able to escape from them.

The IJ asked Sunuwar why he did not mention his kidnapping in his asylum application. Sunuwar responded that he did not know. He also stated that he was not sure whether he told his prior counsel about the incident when his application was written.

Sunuwar testified that after he escaped from his kidnappers, he and his family fled their village and moved to Kathmandu, where Maoists threatened and extorted them. Sunuwar did not provide specifics as to how he was threatened and extorted in Kathmandu, nor did he describe any other incidents where he was harmed in Nepal. He also testified that he was afraid that people who lent him money for his travel to the United States would attack him upon his return.

Sunuwar was asked about his attack on his wife, Rima. He testified that Rima became angry after seeing him speaking with another woman on the phone. She attacked him, and he slapped her in the face twice. Sunuwar denied trying to force Rima to have sex with him.

Sunuwar told the IJ that he pleaded guilty to strangulation because his attorney told him that doing so would secure him an earlier release. He admitted that he sent Rima letters while in jail and claimed to have believed that the protection order would not be effective until he "g[o]t out of jail." A.R. 202.

Rima testified in support of her husband's application. She stated that Maoists twice kidnapped Sunuwar, once for "one and a half months," and another time for "15 to 16 days." A.R. 237. She denied many of the allegations in the affidavit of probable cause (which was based mainly on her statements to the police shortly after the incident), telling the IJ that Sunuwar slapped her, but did not choke or punch her. She further stated that Sunuwar did not put a knife to her throat, and suggested that the statement in the probable cause affidavit that Sunuwar did so was the result of a misinterpretation. Finally, Rima testified that she would face significant hardship if her husband were deported and pleaded with the IJ to forgive Sunuwar and give him a second chance.

**D**

The IJ found Sunuwar removable on all four charged grounds, including violation of a protection order under 8 U.S.C. § 1227(a)(2)(E)(ii). The IJ also denied his application for relief from removal.

The IJ determined that Sunuwar's conviction for strangulation was a particularly serious crime, rendering him ineligible for all forms of relief except deferral of removal under the CAT. The IJ considered the elements of the offense, the "rather significant period of incarceration," and the factual allegations contained in the affidavit of probable cause. A.R. 82. "Given the gravity of the offense," it was clear to the IJ that Sunuwar's conviction was for a particularly serious crime. A.R. 84.

Next, the IJ determined that neither Sunuwar nor his wife testified credibly. This finding was based on three inconsistencies. First, Sunuwar did not mention his alleged kidnap-

8

ping in his written asylum application, even after he amended his application to note that he had suffered past harm. Second, Sunuwar and his wife offered starkly different testimony about his alleged mistreatment in Nepal. Lastly, Sunuwar and his wife offered very different accounts of Sunuwar's conduct on the night of July 2, 2018, in comparison with what is contained in the affidavit of probable cause.

After discounting Sunuwar's and Rima's testimony, the IJ denied Sunuwar's application for CAT deferral, which was based on a claimed fear of torture either by Maoists or by people who loaned him money to travel to the United States. The IJ found that Sunuwar's lack of credibility undermined his claims and that, even considering background evidence on conditions in Nepal, he had not established facts demonstrating that he would likely be tortured if returned to his country.

**E**

Sunuwar appealed to the Board of Immigration Appeals ("BIA"). The BIA ruled against him. It first affirmed that Sunuwar is removable under 8 U.S.C. § 1227(a)(2)(E)(ii) based on his conviction for contempt for violating the protection order. The BIA explained that the no-contact provision in the protection order issued against Sunuwar "involve[d] protection against credible threats of violence, repeated harassment, or bodily injury" within the meaning of § 1227(a)(2)(E)(ii), so Sunuwar was deportable for having been found by a Pennsylvania court to have violated that provision. A.R. 4 (citing *Matter of Strydom*, 25 I. & N. Dec. 507, 510 (BIA 2011)). Next, the BIA upheld the IJ's adverse credibility finding against Sunuwar on substantially the same grounds cited by the IJ. The BIA then upheld the IJ's finding that Sunuwar's strangulation offense was a particularly serious

9

crime. Finally, the BIA affirmed the denial of CAT deferral because of the lack of credible evidence that Sunuwar would more likely than not be tortured upon return to Nepal.

This timely petition for review followed.

**II**

We have jurisdiction over this petition for review of a final order of removal under 8 U.S.C. § 1252(a). Where, as here, "the 'BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions,' we review both decisions." *Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017) (quoting *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 270 (3d Cir. 2012)). In contrast, where the BIA makes a merits decision without adopting or invoking the IJ's reasoning, we review only the BIA's decision. *See Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 683 (3d Cir. 2011) (per curiam).

We review questions of law, including issues of statutory interpretation, de novo, subject to applicable principles of deference. *See Smriko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir. 2004). We review the agency's factual findings under the "highly deferential" substantial-evidence standard: "The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)). An adverse credibility determination is a finding of fact. *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). "If a reasonable fact finder could make [an adverse credibility] finding on the administrative record, then the finding is supported by substantial evidence." *Id.* at 249. In cases like this one, where "our Court is called to evaluate an

IJ's credibility determination that has been adopted by the BIA, we do so with exceptional deference." *Alimbaev v. Att'y Gen.*, 872 F.3d 188, 196 (3d Cir. 2017). To prevail in this Court, a petitioner challenging an adverse credibility finding that is based on inconsistencies in his testimony, or between his testimony and other evidence, "must do more than offer a plausible explanation for his inconsistent statements . . . ; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Pan v. Holder*, 737 F.3d 921, 930 (4th Cir. 2013) (internal quotation marks omitted) (quoting *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005)); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992).

## III

Sunuwar challenges the agency's findings that (1) he is deportable; (2) he committed a particularly serious crime; and (3) his testimony was not credible. We address each issue in turn.

## A

The BIA found Sunuwar deportable under 8 U.S.C. § 1227(a)(2)(E)(ii).[3] That statute provides:

> Any alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against

---

[3] Because the BIA found Sunuwar deportable only under this provision, we do not address the three other charges of removability that the IJ sustained.

11

credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding.

For an alien to be deportable under this provision: (1) there must have been a protection order entered by a court against the alien; (2) at least one portion of that order must have involved protection against a credible threat of violence, repeated harassment, or bodily injury; and (3) "a court must have determined that the alien engaged in conduct that violated that portion." *Rodriguez v. Sessions*, 876 F.3d 280, 284–85 (7th Cir. 2017).

It is undisputed that Sunuwar was convicted of contempt for violating the protection order issued against him. But Sunuwar contends that because his conduct in violation of the protection order consisted solely of writing four non-threatening letters to Rima, he is not deportable. That argument clashes with the language of the statute. It does not matter whether the letters Sunuwar sent to his wife in violation of the order threatened violence.[4] What matters is that the portion of the order that Sunuwar was found to have violated when he

---

[4] The letters themselves are not in the record, and we do not know for certain whether they were non-threatening.

sent the letters involved protecting Rima from threats of violence, repeated harassment, or bodily injury. The BIA has held, and we agree, that the no-contact provisions of a protection order inherently involve "protection against credible threats of violence, repeated harassment, or bodily injury," and therefore fall under § 1227(a)(2)(E)(ii). *See Matter of Strydom*, 25 I. & N. Dec. at 510–11.[5] That holding makes sense because "the primary purpose of a no-contact order is to protect the victims of domestic abuse by the offender." *Id.* at 510 (citing *Szalai v. Holder*, 572 F.3d 975, 982 (9th Cir. 2009); *Alanis-Alvarado v. Holder*, 558 F.3d 833, 839–40 (9th Cir. 2009)). "Once there is contact, there can be a significant risk of escalation to violence." *Cespedes v. Lynch*, 805 F.3d 1274, 1278 (10th Cir. 2015).

The order entered against Sunuwar qualifies as a "protection order" because it was "issued for the purpose of preventing violent or threatening acts of domestic violence." 8 U.S.C. § 1227(a)(2)(E)(ii). So all that is left to decide is whether the state court determined that Sunuwar violated the no-contact provision. The agency properly considered "probative and reliable evidence regarding what [the Pennsylvania] court has determined about [Sunuwar's] violation" in concluding that Sunuwar unlawfully contacted his wife. *Matter of Obshatko*, 27 I. & N. Dec. 173, 176–77 (BIA 2017). Indeed, Sunuwar admitted before the IJ that he violated the no-contact provision of the protection order by writing to his wife. There was no error in the finding of deportability.

---

[5] Other circuits, following *Matter of Strydom*, have reached the same conclusion. *See Garcia-Hernandez v. Boente*, 847 F.3d 869, 873 (7th Cir. 2017); *Cespedes v. Lynch*, 805 F.3d 1274, 1278 (10th Cir. 2015).

13

## B

After finding Sunuwar deportable, the agency determined that his criminal conduct made him ineligible for asylum, withholding of removal under the INA, and withholding of removal under the CAT. An alien is ineligible for asylum if, "having been convicted by a final judgment of a particularly serious crime, [he is] a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii). Withholding of removal under the INA and withholding of removal under the CAT are likewise "not available to individuals who have been convicted of a 'particularly serious crime.'" *Luziga v. Att'y Gen.*, 937 F.3d 244, 252 (3d Cir. 2019) (quoting 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2)).

The phrase "particularly serious crime" includes offenses other than aggravated felonies. *Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255, 267 (3d Cir. 2019) (en banc). While some offenses are per se particularly serious, "the Attorney General [also] retains the authority, through a case-by-case evaluation of the facts surrounding an individual alien's specific offense, to deem that alien to have committed a particularly serious crime." *Id.* at 265. In conducting its analysis, the agency first decides whether an offense's elements "potentially bring the crime into a category of particularly serious crimes." *Luziga*, 937 F.3d at 253 (internal quotation marks omitted) (quoting *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007)). If so, the agency then determines whether the offense is particularly serious by considering all reliable information about the facts and circumstances of the offense, "including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *Id.* (internal quotation marks omitted) (quoting *In re N-A-M-*, 24 I. & N. Dec. at 342). In this case, the agency considered the

14

elements of the offense, Sunuwar's sentence, and the offense conduct, and determined that Sunuwar's strangulation offense was a particularly serious crime that made him ineligible for all forms of relief from removal except deferral of removal under the CAT.

Sunuwar brings three challenges to the agency's particularly-serious-crime determination. First, strangulation is not that serious because "mere touching without violence, force, or injury could violate" the Pennsylvania statute. Pet'r Br. 24. Second, the sentence imposed on him was relatively light—"less than two years" for an offense "that carried a maximum of twenty years." *Id.* Third, the "circumstances behind the conviction" indicate that this was a "mere mutual scuffle." *Id.* at 24–25. Each challenge lacks merit.

**1**

First, there is no indication from the text of the Pennsylvania statute that mere touching without force could constitute strangulation. As the government correctly explains, "the statute requires the offender to apply pressure to the neck or throat of another person or block the nose and mouth of the person, that pressure or blockage must impede that person's breathing or circulation, and the offender [must have] knowingly or intentionally engaged in that conduct." Resp't Br. 40. Strangulation is, of course, a violent crime, and we see no reason to doubt the agency's determination that its elements potentially make Sunuwar's offense a particularly serious crime. *See Denis v. Att'y Gen.*, 633 F.3d 201, 216 (3d Cir. 2011).

**2**

Second, while it is true that Sunuwar's sentence was relatively minor compared to the maximum sentence authorized by applicable law, that does not prevent his offense from being a particularly serious crime. We recently sustained a particularly-serious-crime determination where an alien received a non-custodial sentence of time served. *See Nkomo v. Att'y Gen.*, 930 F.3d 129, 135 (3d Cir. 2019). In *Nkomo*, we underscored that particularly-serious-crime determinations are "not amenable to bright line rules" and that, while the sentence imposed may be factored in, it is not a dominant factor. *Id.* (citing *In re N-A-M-*, 24 I. & N. Dec. at 342–43). The agency's determination that the sentence length favored deeming Sunuwar's crime particularly serious was not erroneous.

**3**

Sunuwar's final challenge can prevail only if we accept his version of what happened during his conflict with his wife and disregard the affidavit of probable cause attesting to Rima's injuries. But the agency may consider all reliable information in making its particularly-serious-crime assessment, including an affidavit of probable cause. *See Luziga*, 937 F.3d at 253. And Sunuwar's plea of guilty to first-degree strangulation signifies that his conduct was far worse than what he recounted to the IJ. The agency's decision to credit the affidavit was reasonable, and the contents of that document indicate that the offense conduct was egregious.

\*　　\*　　\*

The BIA has "broad discretion" to decide whether an offense is a particularly serious crime. *Nkomo*, 930 F.3d at 134.

16

In light of that discretion, we reject Sunuwar's challenges to the BIA's determination that his strangulation offense was a particularly serious crime. Sunuwar's crime disqualifies him from all forms of relief from removal except deferral of removal under the CAT.

## C

After determining that Sunuwar had committed a particularly serious crime, the agency denied Sunuwar's application for CAT deferral mainly on the ground that, because his testimony was not credible, he was unable to establish that he would more likely than not be tortured if removed to Nepal. We review this finding of fact for substantial evidence, meaning that the agency's determination is conclusive unless the record compels a contrary determination. *See Dia*, 353 F.3d at 247–48.

It is usually difficult for a petitioner to prevail on an issue where the substantial-evidence standard of review applies. But Sunuwar's hurdle in trying to overturn the agency's adverse credibility finding is higher still, because his application for relief from removal was filed after the effective date of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. Before the Act was passed, some courts of appeals had manufactured a requirement that adverse credibility findings rest solely on "inconsistencies and improbabilities that go to the heart of the asylum claim." *Zheng v. Gonzales*, 417 F.3d 379, 381 (3d Cir. 2005) (citing *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)); *see also Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003); *Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990).

But Congress grew "[d]issatisfied with judicial reluctance to accept immigration judges' credibility decisions." *Mitondo v. Mukasey*, 523 F.3d 784, 787 (7th Cir. 2008). So, for applications filed after May 11, 2005, the Act replaces our "judicially-created standard" and "allow[s] a trier of fact to find a lack of credibility based on any inconsistency or falsehood, 'without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim.'" *Zheng*, 417 F.3d at 381 n.1 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). The Act also provides that "[t]here is no presumption of credibility." 8 U.S.C. § 1158(b)(1)(B)(iii). These provisions apply not just to applications for asylum, but also to applications for withholding of removal under the INA and for other forms of relief from removal. *See Chen v. Gonzales*, 434 F.3d 212, 216 n.2 (3d Cir. 2005) (citing 8 U.S.C. §§ 1231(b)(3)(C), 1229a(c)(4)(C)). We have recognized that the Act affords IJs "wide latitude . . . in considering all pertinent factors and weighing those factors as [they] deem[] appropriate in each individual case." *Alimbaev*, 872 F.3d at 196; *accord Mitondo*, 523 F.3d at 789 (explaining that the Act permits the agency to "us[e] whatever combination of considerations seems best in the situation at hand" when assessing credibility).[6] As a result,

---

[6] Under 8 U.S.C. § 1158(b)(1)(B)(iii):

"only the most extraordinary circumstances . . . justify over-turning an adverse credibility determination." *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005).[7]

With these principles in mind, we consider the inconsistencies and omissions[8] that undergirded the agency's

> Considering the totality of the circumstances, and all relevant factors, [an IJ] may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, [whether or not] an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

[7] The latitude afforded by the Act is not unlimited. A trivial inconsistency will not support an adverse credibility finding. *See Yuan v. Lynch*, 827 F.3d 648, 653 (7th Cir. 2016).

[8] "An inconsistency and an omission are, for these purposes, functionally equivalent. A lacuna in an applicant's testimony or omission in a document submitted to corroborate the applicant's testimony, like a direct inconsistency between one or more of those forms of evidence, can serve as a proper basis for an adverse credibility determination." *Lin v. Mukasey*, 534 F.3d 162, 166 n.3 (2d Cir. 2008) (per curiam) (citation omitted); *see also Gao v. Sessions*, 891 F.3d 67, 78 (2d Cir. 2018).

adverse credibility finding. The agency gave three principal reasons to support its finding: (1) the evidence was inconsistent as to the number and length of Sunuwar's alleged kidnappings, with Sunuwar testifying that Maoists kidnapped him once for three days, and Rima testifying that Maoists kidnapped Sunuwar twice, once for fifteen or sixteen days and again for forty-five days; (2) Sunuwar initially did not even mention his alleged kidnapping and stabbing—his sole incident alleging past physical harm—in his asylum application; and (3) Sunuwar's and Rima's accounts of the events giving rise to the strangulation conviction conflicted starkly with the allegations in the affidavit of probable cause. We discuss each inconsistency and omission individually.

**1**

Sunuwar first argues that his testimony regarding the length and number of kidnappings can be reconciled with Rima's. While Rima testified that Sunuwar was kidnapped twice, both times for far longer than three days, Sunuwar explains that he and his wife were "describing different events." Pet'r Br. 27. Sunuwar never expressly stated that he had been kidnapped only once, so Rima's testimony describes additional kidnappings that he neglected to mention. Sunuwar thus maintains that Rima never contradicted his testimony that he experienced a kidnapping lasting three days, and that the agency erred in discounting his testimony on this basis.

This explanation fails because it does not compel a reasonable factfinder to excuse the inconsistency or to credit Sunuwar's testimony. We agree with the government that "[i]f Sunuwar had actually been kidnapped more than the one time he alleged, he needed to say so." Resp't Br. 28. The agency properly concluded that this clear and significant discrepancy

20

between Sunuwar's and Rima's testimony called Sunuwar's credibility into serious question. And the agency's reliance on this discrepancy in assessing credibility is even more appropriate because Sunuwar was given ample opportunity to provide additional detail regarding any past harm he suffered, but failed to do so. The agency did not err in relying on this discrepancy as a reason to disregard Sunuwar testimony.

**2**

Sunuwar next claims that his prior counsel is at fault for the fact that his asylum application did not mention the alleged kidnapping, so the omission does not cast doubt on his credibility. Despite this explanation, we conclude that the omission of any reference to the only alleged incident of past harm that Sunuwar testified about plainly supports a finding of adverse credibility. *See Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004) (explaining that the omission of a key event from an alien's written asylum application can support an adverse credibility finding). Sunuwar himself signed the asylum application and attested to its completeness. And the propriety of the agency's reliance on this omission is buttressed by Sunuwar's testimony that he did not know whether he told his prior counsel about his kidnapping before the application was filed. *See* A.R. 210 ("I don't know if I told [my attorney about the kidnapping] when this application was written."). Sunuwar has not demonstrated that a reasonable factfinder would be com-

pelled to accept his explanation for the omission, and the agency did not err in relying on it.[9]

**3**

Finally, Sunuwar contends that the agency erred in relying on the probable-cause affidavit prepared by Officer Iorio to disregard both Sunuwar's and Rima's testimony about the facts giving rise to the strangulation conviction. Sunuwar asserts that it is "beyond reprehensible that an IJ would rely on [the affidavit] as reliable evidence that has been proven beyond a reasonable doubt." Pet'r Br. 30. But the IJ did no such thing. The IJ simply deemed the probable-cause affidavit, which was completed and signed by a trained police officer, to be more reliable evidence than his and Rima's testimony. This weighing of evidence is permitted by the REAL ID Act. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (allowing credibility determinations to stem from "the consistency between the applicant's or witness's . . . statements" and "other evidence of record"). Moreover, the Act permitted the IJ to rely on this inconsistency even though it did not go "to the heart of" Sunuwar's claim that he would be tortured if returned to Nepal. *Id.* The IJ never determined—nor was he required to determine—that the veracity of every factual statement in the affidavit had been established beyond a reasonable doubt. And Sunuwar's decision to plead guilty to first-degree strangulation makes it difficult to believe that he did not inflict serious injuries on his wife. Sunuwar has not established that a reasonable factfinder would be com-

---

[9] Sunuwar contends, based on this omission, that his prior counsel provided ineffective assistance. But he did not raise this claim to the BIA, so we lack jurisdiction to consider it. *See Lin v. Att'y Gen.*, 543 F.3d 114, 120–21 (3d Cir. 2008).

pelled to disregard the affidavit of probable cause and credit his testimony.

\* \* \*

Under the substantial-evidence standard, we defer to an IJ's credibility determination unless "no reasonable fact finder could make that finding on the administrative record." *Dia*, 353 F.3d at 249. The multiple inconsistencies present here "forcefully" preclude Sunuwar from showing that the IJ "was compelled to find him credible." *Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020). Because the agency's adverse credibility finding was reasonable, we may not disturb it.

In the circumstances of this case, it is clear that Sunuwar cannot prevail on his CAT claim without credible testimony. Because we uphold the agency's adverse credibility finding as supported by substantial evidence, we also uphold the agency's decision to deny CAT protection. Sunuwar has not established that he would more likely than not be tortured if removed to Nepal.

**IV**

The agency correctly determined that Sunuwar is deportable and that he committed a particularly serious crime. In addition, the agency's adverse credibility finding is supported by substantial evidence. We will therefore deny the petition for review.