NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 20-3608

—————

KASSEM MOHAMED HAFEED,

Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

—————

On Petition for Review of a Final Order
Of the Board of Immigration Appeals
(BIA-1: A038-623-792)
Immigration Judge: Matthew H. Watters

—————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 2, 2022

Before: McKEE, AMBRO, and SMITH, Circuit Judges

(Opinion filed: March 17, 2022)

—————

OPINION*

—————

AMBRO, Circuit Judge.

Kassem Mohamed Hafeed, a citizen of Yemen, seeks review of a decision by the

Board of Immigration Appeals (Board) affirming an immigration judge's (IJ's) finding

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

that Hafeed was removable.  The Board concluded that his fraud conviction qualifies as an aggravated felony under the Immigration and Nationality Act (INA), thus making removal the result.  *See* 8 U.S.C. § 1101(a)(43)(M) (defining offenses "involv[ing] fraud or deceit in which the loss to the victim or victims exceeds $10,000" as aggravated felonies); § 1227(a)(2)(A)(iii) (explaining that non-citizens convicted of an aggravated felony are deportable).  Because we agree the Board's findings of fact were supported by substantial evidence and sufficient to find Hafeed removable, we deny the petition for review.

## I.

Hafeed has been a lawful permanent resident of the United States since 1986.  In 2016, he was charged with Supplemental Nutrition Assistance Program (SNAP, colloquially called food stamps) fraud under 7 U.S.C. § 2024(b)(1) and wire fraud under 18 U.S.C. § 1343.  Hafeed had been exchanging SNAP benefits for cash at less than their full value.  Specifically, the indictment alleged that Hafeed had "received more than $1,532,642 in [electronic] deposits for food sales that never actually occurred or were substantially inflated."  A.R. at 351.  It also identified a particular transaction in which Hafeed received $103.75 in benefits in exchange for a portion of their value in cash.

Hafeed entered a guilty plea agreement with the Government on both counts.  As part of his plea, he explained that he had received "between $550,000 and $3.5 million in [electronic] deposits for food sales that never actually occurred or were substantially inflated."  *Id.* at 368–69.  He also agreed to forfeit $1,532,642.

2

In 2020, the Department of Homeland Security (DHS) began removal proceedings against Hafeed. It charged him with removability as a noncitizen convicted of an offense involving fraud or deceit in which the loss to the victim exceeded $10,000. *See* 8 U.S.C. § 1101(a)(43)(M).

The Immigration Judge (IJ) denied Hafeed's application for withholding of removal and asylum. He appealed to the Board of Immigration Appeals, which affirmed the IJ's opinion. He then filed this petition for review.

## II.

Hafeed raises three issues. First, he argues SNAP fraud does not categorically require "fraud or deceit" and thus is not an aggravated felony under the INA. *See* 8 U.S.C. § 1101(a)(43)(M). Second, he contends the Government did not show his fraud resulted in a loss greater than the $10,000 threshold for an aggravated felony as defined in the INA because his guilty plea identified only a single $103.75 fraudulent transaction with specificity. And third, he asserts that the Board improperly denied his application for protection under the Convention Against Torture (CAT).

We can set Hafeed's first argument aside. Regardless whether his SNAP fraud conviction is a categorial match to the INA, Hafeed concedes his wire-fraud conviction is an aggravated felony if it caused losses greater than $10,000. *See* Hafeed's Br. at 13, 20 (arguing that SNAP violations are not fraud for purposes of the INA but not raising the same argument for wire fraud); *see also* A.R. at 4 (explaining that Hafeed "conceded before the Immigration Judge that his wire-fraud conviction met the definition of an aggravated felony under section 101(a)(43)(M)"). That conviction therefore was

sufficient for the Board to find him removable. Whether SNAP fraud is a categorical match to the INA is immaterial, and we decline to address the issue.

Hafeed's two other contentions challenge the Board's factual findings. We review those findings for substantial evidence. *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 247 (3d Cir. 2021) (noting that substantial-evidence review is "highly deferential"). When determining the amount of loss attributable to a fraudulent scheme to establish whether a prior fraud conviction qualifies as an aggravated felony under § 1101(a)(4)(M), we apply the "circumstance-specific approach" rather than the categorical approach. *Chiao Fang Ku v. Att'y Gen.*, 912 F.3d 133, 139 (3d Cir. 2019) (citing *Nijhawan v. Holder*, 557 U.S. 29, 33–41 (2009)). This means we identify the loss attributable to that fraud based on the full record, including the indictment, the presentence investigation report, and the plea colloquy. *Id.* When documents supporting a conviction provide evidence of a larger fraudulent scheme, substantial evidence supports concluding that the total loss is greater than the amount identified in any particular transaction. *See id.* at 139–41.

The record consistently shows the aggregate loss from Hafeed's fraudulent activity was well over $10,000. Multiple documents from the record identify the loss as $1,532,641. *See* A.R. at 352, 355, 362, 374; *see also id.* at 377 (identifying the loss as between $550,000 and $3.5 million). Hafeed himself stipulated that he received "between $550,000 and $3.5 million in [electronic] deposits for food sales that never actually occurred or were inflated." *Id.* at 369. He also affirmed to the IJ that he had stolen "monies and funds in excess of 500,000 U.S. dollars" in connection to his wire fraud conviction. *Id.* at 171.

4

Hafeed further maintains that he qualifies for protection under the CAT because he faces involuntary conscription by Houthi rebels in Yemen. "[W]hat is likely to happen to the petitioner if removed," including whether they are more likely than not to experience a potentially torturous harm, is a question of fact. *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010).[1] The Board considered Hafeed's position and concluded he had not shown by a preponderance of the evidence the Houthis would conscript him. It noted that Hafeed offered no evidence suggesting that the Houthis were trying to recruit individuals of his age and that the articles in evidence only pointed to incidents of forced conscription for young men and children. It also explained that none of Hafeed's family members—including his two sons, his twin brother, and another brother who had been in Yemen a mere three months before Hafeed's hearing—had been forcibly recruited or otherwise harmed by the Houthis despite returning to Yemen during the ongoing civil war. In short, while some individuals have been forcibly conscripted by the Houthi group, Hafeed did not show any particular risk to himself. The record evidence supports the Board's finding that he failed to establish a likelihood of being tortured.

---

[1] Whether identified future harms qualify as torture is a question of law. *Kaplun*, 602 F.3d at 271. Additionally, when the petitioner contends that "public officials will acquiesce to the feared tortuous acts of a non-state actor," there is an additional two-part analysis. *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017). "First, the IJ makes a factual finding or findings as to how public officials will likely act in response to the harm the petitioner fears. Next, the IJ assesses whether the likely response from public officials qualifies as acquiescence under the governing regulations. . . . [T]his second part of the inquiry is a legal question." *Id.* Here we need not reach these additional questions because—as explained below in the text—Hafeed fails to show that he is more likely than not at risk of the feared harm even assuming that harm could justify receiving protections under the CAT.

* * * * *

Hafeed makes two arguments that could justify reviewing the Board's decision: that he had not committed an aggravated felony and, alternatively, that he was entitled to protection under the CAT. Both require showing the Board's conclusions lacked adequate support in the record. But the Board's factual findings were supported by substantial evidence. We thus deny the petition for review.