**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2665
_____

JOHNNY PATRICIO CASTRO-URDIELES,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

PETITION FOR REVIEW OF A FINAL ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A206-489-162)
Immigration Judge: John B. Carle
_____

Submitted under Third Circuit LAR 34.1(a)
July 8, 2024
_____

Before: SHWARTZ, PHIPPS, and MONTGOMERY-REEVES, <u>Circuit Judges</u>.

(Filed: July 17, 2024)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Johnny Castro-Urdieles petitions for review the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's (the "IJ") decision that denied Castro-Urdieles's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the following reasons, we will deny his petition.

I

Petitioner, a citizen of Ecuador, unlawfully entered the United States and was detained by the Department of Homeland Security. About two weeks after his entry, an asylum officer conducted a credible fear interview. Petitioner told the asylum officer that he provided a tip to Ecuadorian police about the whereabouts of a gang member three months earlier and was thereafter threatened and assaulted. Petitioner explained that on the morning after his report, a police car approached him and signaled him to stop. He complied, and an officer and two gang members got out of the car, pushed Petitioner against the vehicle, and the officer pointed a gun at him and threatened to kill him. The two gang members called Petitioner a "toad," which is a word used to describe people who provide information to authorities, AR 141, warned him "not to get involved with their gang," and hit and threatened him for reporting the "whereabouts [of] one of their members," AR 472. Petitioner suffered a bloody nose and injured finger. He reported the attack to police, who said that they would not help. He told the asylum officer that he feared returning to Ecuador and could not relocate to another part of the country because

2

the assault happened approximately eight hours from his home city, which he asserts showed that the assailants were looking for him. Based on this account, the asylum officer concluded that "[t]here is a significant possibility that the assertions underlying [Petitioner's] claim [for relief] could be found credible in a full asylum or withholding of removal hearing." AR 467.

Petitioner then appeared before the IJ for a removal hearing, where he conceded removability and applied for asylum, withholding of removal, and CAT relief. In support of his applications, Petitioner claimed, among other things, a fear of returning to Ecuador based on his political opinion.[1]

At the removal hearing, Petitioner testified about the threats and assault, but the details he provided differed from those he shared with the asylum officer. As to the assault, he testified that two uniformed police officers approached and attacked him around 6:30 p.m.—one with a baton, the other with his fists. He also stated that they called him a "toad," "indigenous," and "Pachakutik," which he understood to be a reference to his membership in a political party focused on environmental issues, AR 113-14, 140.[2] He added that he did not report the attack to police because he was afraid

---

[1] Petitioner also asserted that he feared persecution because he is perceived as indigenous and based upon his membership in a particular social group that he defined as "Ecuadorian male Pachakutik Plurinational Unity Movement Party activists, who report illegal activity to the police." AR 225. He does not rely on either of these grounds before us.

[2] When the IJ asked Petitioner, "what does you being Pachakutik[] have anything to do with snitching on someone?" he responded, "[p]robably because we, we are hated by the police and the president of our country." AR 150-51.

of them, and acknowledged that his problems began after he "snitched" about a missing criminal. AR 151. He also told the IJ that he feared returning because he believed the police would harm him.

The IJ denied his applications for relief. The IJ made an adverse credibility determination, finding that Petitioner's testimony about the attack was inconsistent with the description he gave to the asylum officer, including as to: (1) who assaulted him, (2) the assaulters' motives, (3) the time of day of the assault, and (4) how he was assaulted. App. 16-17. The IJ then considered Petitioner's applications for relief and held that, even assuming Petitioner's testimony was credible, he would not be entitled to relief. As to Petitioner's asylum claim, the IJ found that Petitioner (1) was targeted because he provided information about a gang member's whereabouts and not because of his political opinion or involvement with the Pachakutik party, and (2) failed to establish past persecution or a reasonable fear of future persecution on any protected ground.[3] The IJ also concluded that because Petitioner failed to establish eligibility for asylum, he necessarily failed to establish eligibility for withholding of removal, which has a higher burden of proof. Lastly, the IJ rejected Petitioner's request for CAT relief because he (1) did not present evidence of past torture, (2) more than six years passed since his last

---

[3] Petitioner does not challenge the IJ's conclusion that Petitioner failed to show a nexus between the harm suffered or feared and (1) his perceived indigenous race, or (2) his proposed social group (even assuming that group is legally cognizable). Thus, these issues are waived. See Travitz v. Ne. Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994).

encounter with the assailants, and (3) any claim of future torture failed as it was based on a "hypothetical chain" of events that the police and/or gang members would target and torture Petitioner upon his return to Ecuador. App. 23 (citation omitted).

The BIA affirmed the IJ's decision without issuing a separate opinion. Petitioner petitions for review.

II[4]

A

We first consider Petitioner's challenge to the IJ's adverse credibility finding. An IJ bases its credibility determination on the totality of the circumstances, including, "the internal consistency" of the applicant's statements "and any inaccuracies or falsehoods in such statements," regardless of whether such inconsistencies "go to the heart of the applicant's claim, or any other relevant factor."[5] 8 U.S.C. § 1158(b)(1)(B)(iii).

---

[4] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b). We have jurisdiction under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA adopts the IJ decision without writing its own opinion, we treat the IJ decision as the final agency determination. Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003). We review conclusions of law de novo and factual findings under the "highly deferential" substantial-evidence standard, under which such "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Sunuwar v. Att'y Gen., 989 F.3d 239, 247 (3d Cir. 2021) (internal quotation marks and citations omitted).

An adverse credibility determination is a finding of fact, which we review "with exceptional deference." Id. (internal quotation marks and citations omitted). Thus, a petitioner challenging an adverse credibility finding based on inconsistencies in testimony "must do more than offer a plausible explanation for his inconsistent statements," and "must demonstrate that a reasonable fact-finder would be compelled to credit his testimony." Id. (internal quotation marks and citations omitted) (emphasis removed).

[5] An IJ may also consider:

5

The IJ properly considered the inconsistencies between Petitioner's testimony and his statements during the credible fear interview regarding the attack, including those concerning (1) the assaulters, (2) their motives, (3) the timing of the assault, and (4) how he was assaulted.[6]  Citing these inconsistencies, and the lack of explanation for them,[7] the IJ found Petitioner's testimony not credible.  Given our highly deferential standard of review, and the IJ's "specific, cogent reasons," Caushi v. Att'y Gen., 436 F.3d 220, 226

---

> [T]he demeanor, candor, or responsiveness of the applicant . . .  the inherent plausibility of the applicant's . . . account . . . [and] the consistency of such statements with other evidence of record . . . .

8 U.S.C. § 1158(b)(1)(B)(iii); cf. Sunuwar, 989 F.3d at 250 (noting that this provision applies to many forms of relief from removal).

[6] Petitioner's accounts about the 2014 assault are compared below:

|  | Credible Fear Interview | IJ Hearing |
|---|---|---|
| Assaulters | One police officer<br>Two gang members | Two police officers |
| Motive | Provided tip about criminal | Political opinion<br>Perceived race (indigenous)<br>Provided tip about criminal |
| Time | Morning | Evening |
| Means | Gun | Baton<br>Fists |

[7] The IJ noted that Petitioner could not provide an explanation for the inconsistences, but rather mentioned "vaguely and without detail [] that perhaps he was tired or things were unclear to him at the interview," App. 17, an excuse that the IJ held "lacks credibility" given that (1) the interview occurred two weeks after his illegal entry and thus closer in time to the alleged events that caused him to flee Ecuador, (2) there is no indication that he had difficulty understanding the interviewer or the questions seeking to elicit information about why he left Ecuador and feared returning, and (3) the interview was carefully memorialized.

6

(3d Cir. 2006) (internal quotation marks and citations omitted), for its adverse credibility determination, we cannot conclude that this finding lacks support. Sunuwar, 989 F.3d at 247.

B

We next consider Petitioner's asylum claim. Relevant here, to be eligible for asylum, Petitioner must establish that he has a "well-founded fear of [future] persecution on account of . . . membership in a particular social group[] or political opinion." 8 U.S.C. § 1101(a)(42)(A). A "well-founded fear" of future persecution requires both "subjective apprehension" and an objective showing "that a reasonable person in [the petitioner's] position would fear persecution."[8] Huang v. Att'y Gen., 620 F.3d 372, 381 (3d Cir. 2010) (internal quotation marks and citations omitted). Where, as here, a non-citizen claims persecution on account of political opinion, he must establish that the persecution was or will be on account of that opinion. See INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992).

Here, substantial evidence supports the IJ's determination that, even if Petitioner's testimony was credible, Petitioner failed to establish that he experienced past persecution, or has a well-founded fear of future persecution, based on his political opinion. As to

---

[8] Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Camara v. Att'y Gen., 580 F.3d 196, 202 (3d Cir. 2009) (citation omitted). "[A]n alien who has demonstrated past persecution is presumed to face future persecution if removed." Gambashidze v. Ashcroft, 381 F.3d 187, 191 (3d Cir. 2004) (citing 8 C.F.R. § 208.16(b)(1)(i)).

past persecution, there is substantial evidence for the IJ's conclusion that the assault was motivated by Petitioner's tip to authorities and not his political involvement with the Pachakutik party. Petitioner told the asylum officer that (1) he was threatened for being a "toad," AR 470, and (2) his assaulters warned him "not to get involved with their gang," AR 472. Likewise, the proximity between the tip and the threats and attack that followed, and the fact that Petitioner was never threatened or harmed before providing the tip, support the IJ's conclusion that any harm suffered was motivated by his tip about a gang member's whereabouts and not his political opinion. See Espinosa-Cortez v. Att'y Gen., 607 F.3d 101, 108-09 (3d Cir. 2010) (timing of persecution may be circumstantial evidence of motive). As to future persecution, the record lacks evidence that Pachakutik party members are persecuted based on their political beliefs. Thus, the IJ did not err in denying Petitioner's asylum application.

C

The IJ also correctly denied Petitioner's request for withholding of removal. To obtain such relief, a petitioner must establish a "clear probability of persecution," meaning that it is "more likely than not" that he would suffer persecution. Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 591 (3d Cir. 2011) (internal quotation marks and citations omitted). Because Petitioner cannot meet the lower "well-founded fear of persecution" standard for asylum, it necessarily follows that he cannot meet the more stringent standard for withholding of removal. Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Thus, the IJ did not err.

8

D

Petitioner's application for CAT relief also fails.  To qualify for CAT protection, the applicant must (1) "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal," 8 C.F.R. § 1208.16(c)(2), and (2) that such torture would be "with the consent or acquiescence of a public official . . . or . . . person acting in an official capacity," 8 C.F.R. § 208.18(a)(1).

Substantial evidence supports the IJ's conclusion that, even accepting Petitioner's testimony, he failed to show a clear probability of torture in Ecuador by or with the government's acquiescence because (1) the assault did not constitute torture,[9] (2) six years passed since his last encounter with the attackers, and (3) any claim of future torture was based on a "hypothetical chain" of events that the police and/or gang members would target and torture Petitioner upon his return to Ecuador, which Petitioner has not shown was more likely than not to happen.  App. 23 (quoting Matter of J-F-F-, 23 I. & N. Dec. 912, 917 (A.G. 2006)).  Because the record does not compel the conclusion that each link in the "hypothetical chain" was more likely than not to occur (i.e., learning

_____

[9] Even assuming the assault here constitutes past torture (which it does not), Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017) (describing torture as act intentionally inflicted to cause severe physical or mental suffering for an illicit purpose), Petitioner has not established that it is more likely than not that he would be tortured if returned to Ecuador.  See 8 C.F.R. § 1208.16(c)(2); see also Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005) (concluding isolated beatings of Haitian prisoners do not show that such beatings were so pervasive that it was more likely than not that petitioner would be subjected to them if imprisoned pursuant to Haiti's policy of detaining criminal deportees).

of Petitioner's return, finding him, targeting him, and torturing him, and that the government would acquiesce in such conduct), the IJ did not err in concluding that Petitioner failed to demonstrate a clear probability of future torture if he returned to Ecuador.

IV

For these reasons, we will deny the petition for review.