**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1544
_____

FRANCISCO MERINO-ANGEL,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency No. A208-452-231)
Immigration Judge: Amanda Jeannopoulos
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 6, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Filed: February 12, 2026)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Francisco Merino-Angel petitions for review of a decision by the Board of Immigration Appeals (BIA) affirming the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We will deny the petition.

I

A native and citizen of El Salvador, Merino-Angel entered the United States through Hidalgo, Texas in October 2015. The Department of Homeland Security charged him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). He conceded removability but applied for asylum, 8 U.S.C. § 1158, withholding of removal, 8 U.S.C. § 1231(b)(3), and CAT relief, 8 C.F.R. §§ 1208.16–18.

In support of his application, Merino-Angel submitted an affidavit stating that he and his sister Maria were targeted by the Mara Salvatrucha (MS-13) gang because Maria, a police officer, had arrested and imprisoned "one of the chiefs of the gangs in [their] town." A.R. 283. He also stated that his brother Ivan, another police officer, was targeted and threatened by the gang. The affidavit recounts an attack at a bus stop in February 2014, where two MS-13 members "launch[ed]" at Merino-Angel with knives and told him that he would "pay for what [his sister] did." *Id.* Merino-Angel claims that he fought one of the attackers, "was able to take the knife away," and escaped by "thr[owing] [him]self down a cliff." A.R. 283–84. He also stated that around two months after the bus-stop attack, MS-13 members "opened fire" on his home. A.R. 284. Finally, he described an attack at his workplace in August 2014. He claims that when he arrived at

2

work, he noticed "two men and a teenager" waiting for him, armed with guns. *Id.* He claims they then fired at him and that he ran into his work building where the security guard intervened.

The Immigration Judge (IJ) held a hearing on Merino-Angel's application, and Merino-Angel testified. Describing the February 2014 bus-stop attack, Merino-Angel said the attackers told him that "somebody has to pay" for the fact that his sister put their "boss" in jail. A.R. 191. On cross-examination and in response to questioning from the IJ, he testified that two women witnessed the attack, and that the attackers ceased "because [the women started] screaming." A.R. 214. The IJ pointed out that in his written affidavit, Merino-Angel said the attack ended because he "threw [him]self down a cliff" and asked why he had not mentioned that in his testimony. A.R. 231. Merino-Angel responded that he did escape over a cliff but said he "did not recall that" while he was testifying. *Id.*

As for the August 2014 attack, Merino-Angel said that "two men intercepted [him] and they wanted to kill [him]," but he managed to run into his workplace and a security guard kept the two gang members out. A.R. 195. On cross-examination, he testified that the attackers were armed with knives. When the Government's attorney noted that his affidavit averred that the attackers were armed with guns, not knives, Merino-Angel said the written statement was incorrect. And when the IJ asked why his written affidavit said there was a third attacker, Merino-Angel said he "[did] not remember mentioning a third person." A.R. 234. He offered no explanation for either inconsistency.

Merino-Angel also testified about the shooting at his home. He testified that he was no longer living there when the shooting occurred, but that his sister Guadalupe was

3

and she told him about the shooting "[m]onths later." A.R. 198–99. The IJ later sought clarity about when the shooting occurred, and Merino-Angel said it happened after the August 2014 attack at his workplace. The IJ pointed out that this conflicted with his written affidavit, which said the shooting occurred around April 2014, when Merino-Angel was still living in the house. Merino-Angel responded that he did "not recall the date" of the shooting. A.R. 233.

The IJ denied Merino-Angel's application. In her written opinion, the IJ explained that she did not find Merino-Angel a credible witness. His testimony, the IJ found, was "internally inconsistent and inconsistent with the evidence of record." A.R. 123. She noted that Merino-Angel's testimony about the February and August 2014 attacks and the shooting at his house differed in "significant" ways from the descriptions of those events in his written affidavit. A.R. 123–24. And the IJ found that Merino-Angel "ha[d] failed to provide meaningful and credible explanations for" the inconsistencies. A.R. 124. Because Merino-Angel's testimony was the primary evidence in support of his application for asylum, withholding of removal, and CAT relief, the IJ's adverse credibility determination doomed his claims.

The Board of Immigration Appeals (BIA) dismissed Merino-Angel's appeal and affirmed the IJ's decision, finding no clear error in the IJ's adverse credibility determination. This timely petition followed.

4

II[1]

Merino-Angel contends that the IJ should have credited his testimony.[2] Witness credibility is an issue of fact, *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003), so we review the IJ's adverse credibility determination for substantial evidence, disturbing it only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 91 (3d Cir. 2021) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Merino-Angel does not contest the IJ's conclusion that his testimonial descriptions of the alleged gang attacks were inconsistent with the earlier descriptions in his written affidavit. Instead, he challenges the weight the IJ assigned those inconsistencies, arguing that they were too minor to support the IJ's finding. We disagree. An IJ may find a lack of credibility based on an inconsistency "without regard to whether [the] inconsistency. . . goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). So only "trivial" inconsistencies will not support an adverse credibility determination. *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 251 n.7 (3d Cir. 2021). And a reasonable factfinder could conclude that the inconsistencies the IJ relied on here are not trivial for three reasons.

---

[1] The IJ had jurisdiction under 8 C.F.R. § 1240.1(a). The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a). Because the BIA "invoke[d] specific aspects of the IJ's analysis and factfinding" in support of its conclusions, we review both decisions. *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 246 (3d Cir. 2021) (quoting *Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017)).

[2] Merino-Angel also makes vague references to his due process rights, but he forfeited that argument by failing to meaningfully develop it. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017).

First, Merino-Angel gave two accounts of how the February 2014 bus-stop attack ended. In his written affidavit, he said he escaped by jumping over a cliff, but in his hearing testimony he said the attackers stopped because two witnesses screamed at them. Merino-Angel suggests that these lapses in memory are to be expected because he was in "survival mode" during the attack. Merino-Angel Br. 17. But a reasonable factfinder could just as easily conclude, as the IJ and BIA did, that jumping over a cliff is so "harrowing" an experience that the testifying victim would not forget to mention it. A.R. 4, 123.

Second, Merino-Angel inconsistently recounted the number of attackers and their weapons at his workplace in August 2014. His affidavit says three attackers shot at him, but he testified at his hearing that there were only two assailants and that they wielded knives. He contends that "harp[ing] on the weapon . . . is simply focusing on the minutia." Merino-Angel Br. 15. Here again, the IJ and BIA were entitled to conclude that whether Merino-Angel was shot at during the attack would be an essential fact, not a small detail.

And third, Merino-Angel failed to consistently explain whether the alleged shooting at his home occurred when he still resided there or after he moved out. Merino-Angel misses the point when he argues that his recollection merely "mistook approximately four months of time." Merino-Angel Br. 16. What the IJ found significant was not Merino-Angel's failure to remember the month of the attack, but his failure to remember whether it occurred during the time he was still living in the house. A reasonable factfinder could expect a credible witness to remember that.

6

In sum, the inconsistencies between Merino-Angel's oral testimony and written affidavit concerned key details of the three attacks he allegedly suffered. A reasonable factfinder could expect a credible witness to recount those details consistently, so substantial evidence supports the IJ's credibility determination.

\* \* \*

For the reasons stated, we will deny the petition.