**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2982
_____

MANUEL ABILIO REYES-ORTIZ,
                                        Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A203-557-226)
Immigration Judge: D'Anna H. Freeman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 25, 2021
_____

Before:  GREENAWAY, JR., and SHWARTZ, <u>Circuit Judges</u>, and KANE, <u>District
Judge</u>.*

(Opinion Filed: July 19, 2021)
_____

OPINION**
_____

_____

        * The Honorable Yvette Kane, United States District Judge for the Middle District
of Pennsylvania, sitting by designation.
        ** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KANE, District Judge.

Manuel Abilio Reyes-Ortiz petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of the decision of an Immigration Judge ("IJ," and together with the BIA, the "agency") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We will dismiss in part and deny in part the petition for review.

## I. Background

Reyes-Ortiz, a native and citizen of Honduras, unlawfully entered the United States in April 2019. The Department of Homeland Security ("DHS") issued a Notice and Order of Expedited Removal pursuant to its authority under § 235(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(1). Because Reyes-Ortiz expressed a fear of returning to his native country, he was referred to an asylum officer for a credible fear interview pursuant to INA § 235(b)(1)(A)(ii), 8 U.S.C. § 1225(b)(1)(A)(ii). His interview was conducted on May 29, 2019.

During his credible fear interview, Reyes-Ortiz—a former police officer for the National Police of Honduras for over eighteen years—referenced two incidents as the sources of his fear of returning to Honduras. First, he stated that five masked men entered his house one night in September 2017, held him and his family at gunpoint, and asked where he was "hiding the person they were looking for." A.R. 446. Reyes-Ortiz told the men that he was not hiding anyone, after which three of the men beat him for five minutes on his chest, stomach, feet, and legs. The men were wearing uniforms of "investigative police," part of the "ATI," which is a "department that belongs to the

2

public ministry." A.R. 447. One of the men indicated to the others that they needed to "hurry up" because they had made a mistake and needed to move on to a different house. A.R. 447. Reyes-Ortiz informed his superior about the incident, and a patrol car was assigned to his house for a period of time.

As to the second incident, Reyes-Ortiz stated that in January 2019, four masked, armed, and uniformed individuals "from DPI, investigative police, [] same as ANIC," emerged from a white car at his residence and threatened that if he did not leave the country within 24 hours, he would be killed, but did not physically harm him. A.R. 447. Reyes-Ortiz speculated that the individuals targeted him "perhaps because of [his] job." A.R. 447. He elaborated that he had "worked with the commissioner, for the big bosses," and would be called upon to escort "all kinds of people," including narcotics traffickers and other criminals, into the offices of those high-ranking officers. A.R. 447. Reyes-Ortiz guessed that the September 2017 and January 2019 incidents may have been connected because of the manner in which both groups arrived and their use of uniforms and masks.

The asylum officer found that Reyes-Ortiz had a credible fear of returning to Honduras and referred his case to an IJ. Thereafter, DHS charged Reyes-Ortiz as removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I)—as an alien not in possession of a valid entry document—and INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i)—for being present in the United States without being admitted or paroled. At an initial appearance before an IJ, Reyes-Ortiz conceded removability, and the IJ found him removable as charged, designating Honduras as the country of removal.

Reyes-Ortiz then completed and filed an I-589 application for asylum and withholding of removal.[1] In his application, he indicated that police officers visited his house around October 2017 and threatened and harmed him because he had resigned from the police force and opposed the Honduran government's support of crime. He made no mention of the January 2019 incident that he had referenced in his asylum interview.

At a hearing before the IJ, Reyes-Ortiz testified in support of his application. He expressed the same concerns that he had raised before the asylum officer, reiterating his belief that, if he returns to Honduras, he will be met with certain death within 24 hours. He also recounted additional circumstances raised in neither his credible fear interview nor his I-589 application, including that he had witnessed specific incidents of police corruption that prompted his voluntary resignation from the National Police of Honduras.

The IJ denied his application in all respects. As an initial matter, the IJ made an adverse credibility determination against Reyes-Ortiz pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231,[2] based on discrepancies in his testimony,

---

[1] He sought asylum and withholding of removal based on political opinion, membership in a particular social group, and protection under the CAT.

[2] Because Reyes-Ortiz filed his application for relief after 2005, the REAL ID Act applies. Concerning applications for asylum, the REAL ID Act provides that the "testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii). There is no presumption of credibility, and a trier of fact may make an adverse credibility determination based on any inconsistencies, inaccuracies, or falsehoods "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim . . . ." INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). "These provisions apply not just to applications for asylum, but also to applications for withholding of removal under the INA and for other forms of relief from removal." Sunuwar v. Att'y

inconsistencies between his testimony and documentary evidence, and a material omission concerning his testimony that he had observed police corruption beginning in 2013. The IJ concluded that Reyes-Ortiz did not carry his burden of proof based on his testimony alone and that his documentary evidence did not sufficiently corroborate his testimony. The IJ alternatively concluded that, even if Reyes-Ortiz had testified credibly, he did not establish that he suffered past persecution or harbored a well-founded fear of future persecution because of his membership in a particular social group, i.e., as a former police officer, or on any other basis.

Reyes-Ortiz appealed to the BIA, arguing primarily that the IJ erroneously concluded that he did not testify credibly, particularly in light of video teleconferencing issues that arose during his hearing. Reyes-Ortiz summarily advanced two additional grounds in support of his BIA appeal. First, he argued that the IJ "erred by finding that [he] was not persecuted, and does not have a well-founded fear of persecution, on account of his political opinion or membership in a particular social group." A.R. 15. He asserted that the IJ's finding "was against the weight of the evidence and was clearly erroneous." A.R. 15. Second, he argued that he "is eligible for [CAT] protection" because, "[r]egardless of [his] credibility, he presented facts and circumstances warranting protection under [CAT]." A.R. 15.

---

Gen., 989 F.3d 239, 250 (3d Cir. 2021) (citing Chen v. Gonzales, 434 F.3d 212, 216 n.2 (3d Cir. 2005) (citing INA §§ 240(c)(4)(C), 241(b)(3)(c), 8 U.S.C. §§ 1229a(c)(4)(C), 1231(b)(3)(C))). Under the REAL ID Act, "only the most extraordinary circumstances . . . justify overturning an adverse credibility determination." Id. at 250-51 (3d Cir. 2021) (alteration in original) (internal quotation mark omitted) (quoting Jibril v. Gonzales, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005)).

The BIA adopted the IJ's adverse credibility determination and concluded that Reyes-Ortiz had waived—by failing to "meaningfully contest"—the other grounds raised in his BIA appeal. A.R. 4. The BIA determined that the IJ's adverse credibility finding was not clearly erroneous and was based on specific and cogent reasons evident in the record. Concerning Reyes-Ortiz's contention that video teleconferencing issues tainted the proceedings, the BIA acknowledged that there had been audio issues during the merits hearing but noted that only one had occurred during direct examination. The BIA further noted that the IJ addressed the video teleconferencing issues by expressly declining to render an oral decision to ensure that Reyes-Ortiz received a full and fair hearing.

## II. Discussion

We have jurisdiction over this petition for review of a final order of removal under INA § 242(a), 8 U.S.C. § 1252(a). Where, as here, "the 'BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions,' we review both decisions." Uddin v. Att'y Gen., 870 F.3d 282, 289 (3d Cir. 2017) (quoting Oliva-Ramos v. Att'y Gen., 694 F.3d 259, 270 (3d Cir. 2012)). In contrast, where the BIA makes a merits decision without adopting or invoking the IJ's reasoning, we review only the BIA's decision. See Calla-Collado v. Att'y Gen., 663 F.3d 680, 683 (3d Cir. 2011) (per curiam).

We review questions of law, including issues of statutory interpretation, de novo, subject to applicable principles of deference. Smriko v. Ashcroft, 387 F.3d 279, 282 (3d Cir. 2004). We review the agency's factual findings—including an adverse credibility

6

finding—under the "highly deferential" substantial-evidence standard: "The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020) (quoting INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B)); see Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc) (noting that an adverse credibility determination is a finding of fact). Where "our Court is called to evaluate an IJ's credibility determination that has been adopted by the BIA, we do so with exceptional deference." Alimbaev v. Att'y Gen., 872 F.3d 188, 196 (3d Cir. 2017). A "petitioner challenging an adverse credibility finding that is based on inconsistencies in his testimony, or between his testimony and other evidence, 'must do more than offer a plausible explanation for his inconsistent statements . . . ; he must demonstrate that a reasonable fact-finder would be compelled to credit his testimony.'" Sunuwar, 989 F.3d at 247 (alteration in original) (quoting Pan v. Holder, 737 F.3d 921, 930 (4th Cir. 2013)).

Before us, Reyes-Ortiz first contends that the IJ's adverse credibility determination is not supported by substantial evidence. He further argues that the BIA relied on an "unestablished" standard in concluding that he waived his challenges to the IJ's merits-based analysis. Pet'r's Br. at 29. In connection with his first argument, Reyes-Ortiz asserts that his credibility was negatively affected by translation errors during his hearing before the IJ. Because Reyes-Ortiz did not assert any translation errors in his BIA appeal, we lack jurisdiction to review that unexhausted aspect of his

7

petition for review.[3]

We find that substantial evidence supports the IJ's adverse credibility determination as adopted by the BIA.  Reyes-Ortiz testified that he voluntarily resigned from the police force in October 2017 due to police corruption, but he indicated in his I-589 application that his employment as an officer ended in November 2016.  He addressed the discrepancy—asserting that he submitted his request to retire in 2016 but was not approved for retirement until late 2017—but the IJ found his explanation unpersuasive.  The IJ, and later the BIA, noted that Reyes-Ortiz's testimony was inconsistent with his documentary evidence, namely an employment cancellation agreement indicating that his employment contract was cancelled due to a "[r]estructuring of the national police" on December 1, 2016, and a letter from his neighbor stating that Reyes-Ortiz was "purged" from the police department.  A.R. 194; A.R. 207.  The BIA additionally observed that Reyes-Ortiz inconsistently testified to various retirement dates during his hearing.

The BIA and the IJ, moreover, noted that Reyes-Ortiz omitted a material fact

---

[3] The Court's jurisdiction to review a final order of removal is limited to cases in which a petitioner "has exhausted all administrative remedies available as of right . . . ." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); see Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).  A petitioner has exhausted his administrative remedies if he raises all claims or grounds for relief before the BIA.  Although the exhaustion principle is not applied "in a draconian fashion," "[o]ut of respect for the administrative process, we will not require the BIA to guess which issues have been presented and which have not." Lin v. Att'y Gen., 543 F.3d 114, 121-22 (3d Cir. 2008).  Even if a petitioner does not exhaust a claim, we may still have jurisdiction to consider it if the BIA sua sponte addressed the claim on its merits.  Id. at 122-24.  In Reyes-Ortiz's case, the BIA was not given any notice of a faulty translation issue, and the BIA did not sua sponte address the issue.  We therefore lack jurisdiction to entertain his claims of translation errors.

during his testimony—specifically, that in 2013, he observed a high-ranking police officer speaking with individuals associated with organized crime. On both direct and cross-examination, Reyes-Ortiz stated that he knew the individuals speaking with the high-ranking officer were organized crime members for no other reason than that they traveled with private security. Only when pressed further about the ways in which private security is indicative of criminal association did Reyes-Ortiz revise his narrative to assert that he had recognized one of the individuals as one Wilter Blanco, a drug boss whom Reyes-Ortiz had personally investigated and who was later arrested for drug trafficking. While Reyes-Ortiz testified that he had remembered this fact after a recess, the IJ found his explanation dubious, and the BIA found no clear error in that regard.

Given the inconsistences and omission in Reyes-Ortiz's testimony and the lack of adequate explanations for either, it cannot be said that a reasonable adjudicator would be compelled to find him credible. Reyes-Ortiz argues that any inconsistences or omissions were minor and inconsequential, see Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004) (noting that minor inconsistencies do not provide an adequate basis for an adverse credibility finding), but with the enactment of the REAL ID Act in 2005, an IJ's adverse credibility finding may be based on any inconsistencies, inaccuracies, or falsehoods regardless of whether they go to the heart of an applicant's claim, see, e.g., Sunuwar, 989 F.3d at 250. In any event, a critical claim advanced by Reyes-Ortiz is that he voluntarily resigned because of police corruption and was targeted as a result. We are not persuaded that the inconsistences and omission reflected in the record, insofar as they relate to this critical claim, were so minor as to be inconsequential.

9

To be sure, the documentary evidence that Reyes-Ortiz submitted for the agency's consideration suggests pervasive corruption among high-ranking Honduran police officials, but such evidence does not explain the inconsistencies borne out by the administrative record. Reyes-Ortiz's evidence of country conditions, including of widespread corruption in Honduras, is equivocal: while it supports Reyes-Ortiz's claims of rampant corruption, it is consistent with other evidence in the record indicating that he was terminated from the police force because he himself was a corrupt officer. Similarly, while the letter from Reyes-Ortiz's neighbor corroborates his claim that men came to his house and threatened him, the same letter indicates that Reyes-Ortiz was purged from the police force. Therefore, we cannot conclude that the BIA erred in determining that the documentary evidence did not sufficiently corroborate his claims.

In short, the adverse credibility determination made against Reyes-Ortiz was supported by specific and cogent reasoning as well as substantial evidence in the record. See, e.g., Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003). Accordingly, we will affirm the BIA's decision to uphold the IJ's adverse credibility determination, which provides a sufficient basis to deny Reyes-Ortiz's claims for asylum, withholding of removal, and CAT protection. See Dia, 353 F.3d at 247 (stating that "[a]n alien's credibility, by itself, may satisfy his burden, or doom his [asylum] claim"); Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003) ("If [a petitioner] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal . . . ."); Muhanna v. Gonzales, 399 F.3d 582, 589 (3d Cir. 2005) (noting that an applicant's

credibility may alone "doom his [CAT] claim").[4]

## III. Conclusion

For the foregoing reasons, we will dismiss in part and deny in part the petition for review.

---

[4] An adverse credibility determination will not always preclude a CAT claim if there is independent evidence in support of the claim. Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003). Here, however, Reyes-Ortiz based his CAT claim on the same factual predicate as his asylum and withholding claims. On this record, we conclude that substantial evidence supports a conclusion that Reyes-Ortiz is not likely to face torture if removed to Honduras. Even if Reyes-Ortiz had offered independent evidence in support of his CAT claim, we would find that the BIA did not abuse its discretion when it deemed waived his one-sentence argument in support of that claim. It is within the BIA's discretion to "determine when to summarily dismiss an appeal for lack of specificity and when the BIA is sufficiently appraised of the appealable issues to entertain the appeal." Uddin, 870 F.3d at 287-88 (internal quotation marks omitted) (holding that the BIA did not abuse its discretion when it dismissed the petitioner's CAT claim because he had not "meaningfully challenged" the IJ's denial of his request for protection under the CAT). While the BIA used a different phrasing in this context—"contest[ed]" rather than "challenged"—we view this word choice as a distinction without a difference based on the record before us.