NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3236
_____

MAGDI SAAD RADWAN,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES

_____

On Petition for Review of a Final Order of
the Board of Immigration Appeals
No. A096-546-120
Immigration Judge:  Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 14, 2021

Before: McKEE, JORDAN, and FUENTES, *Circuit Judges*

(Opinion filed: September 8, 2021)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*

Magdi Radwan petitions for review of a decision by the Board of Immigration Appeals ("BIA") affirming an order of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

**I.**

Radwan, a native and citizen of Egypt, has not left the U.S. since he entered with a K-1 visa and married Theresa Kuth in 2005. In 2006, his status was adjusted to lawful permanent resident. After a physical altercation between Radwan and Kuth's son, Radwan pled guilty and was convicted of aggravated assault in 2010.[1] The couple then divorced later that year. As a result of his conviction, the Department of Homeland Security charged Radwan with removability pursuant to sections 1227(a)(2)(A) and 1227(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"). In the years leading up to his removal proceedings, Radwan sought readjustment of his status through another marriage. When that marriage dissolved, Radwan filed an application for asylum, withholding of removal, and CAT protection, claiming that he had been and would continue to be persecuted in Egypt because of his affiliation with the Muslim

---

[1]    In addition to one count of aggravated assault, Radwan pled guilty and was convicted of two counts of simple assault.

Brotherhood.  Radwan testified at his final hearing, but the IJ identified several inconsistencies and omissions in his testimony and determined that he was not credible. The IJ then denied Radwan's application for several reasons, including that Radwan did not provide sufficient evidence to corroborate his claims, had been convicted of a "particularly serious crime," failed to establish past persecution or a well-founded fear of future persecution, and failed to establish it was "more likely than not" that he would be tortured on return to Egypt.  The BIA affirmed the IJ's decision without addressing the particularly serious crime determination.

In this petition for review, Radwan argues that the BIA erred by (1) affirming the IJ's determination that he was convicted of a particularly serious crime; (2) concluding his testimony was not credible; (3) concluding that the IJ had given Radwan a sufficient opportunity to provide corroborating evidence; and (4) affirming the IJ's determination that he did not show past persecution or a well-founded fear of future persecution or that he was likely to be tortured if he returned to Egypt.

## II.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1) and may also review the IJ's decision to the extent it is adopted, affirmed, or relied upon by the BIA.[2]  We review the BIA's legal conclusions *de novo* and give deference to the factual findings so long as they are supported by substantial evidence on

---

[2]     *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020).

3

the record as a whole.[3]  Because the BIA did not discuss the IJ's particularly serious

crime determination, and because doing so was unnecessary to justify the BIA's

conclusion, we lack jurisdiction to review it here.[4]

## III.

## A.

Radwan first challenges the IJ's adverse credibility finding.  An IJ may make

credibility determinations based on an inconsistency in the record "without regard to

whether [that] inconsistency. . . goes to the heart of the applicant's claim."[5]  "As a result,

'only the most extraordinary circumstances . . . justify overturning an adverse credibility

determination.'"[6]  The IJ identified inconsistencies regarding the dates of arrest and

length of Radwan's detentions, the events surrounding those detentions, and the details

about his political activity and membership in the Muslim Brotherhood.  The IJ also

found these inconsistencies were not trivial, as Radwan argues, because they speak to the

heart of his asylum claim.  For example, the IJ noted inconsistencies between Radwan's

---

[3]      *Id.*

[4]      *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

[5]      *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 250 (3d Cir. 2021) (quoting *Zheng v. Att'y Gen.*, 417 F.3d 379, 381 n.1 (3d Cir. 2005)); *see* 8 U.S.C. § 1158(b)(1)(B)(iii).

[6]      *Sunuwar*, 989 F.3d at 250–51 (quoting *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005)).

4

testimony and the affidavit he submitted regarding how the Government learned of his affiliation with the Muslim Brotherhood—which is pertinent to the asylum analysis.[7]

The IJ's credibility finding "is conclusive unless the record compels a contrary determination."[8]  Here, the IJ did not err in concluding that Radwan lacked credibility, nor did the BIA err in adopting that determination.  Radwan testified that he had been arrested and detained twice in Egypt, once in 1988 and then again in 2004.  However, he stated in his application and affidavit that he traveled to the U.S. in 2000, *following* his second arrest.   Radwan also repeatedly testified that he was detained for two weeks in 1988 and for three weeks in 2004.  However, he stated in his application and affidavit that he was detained for seven days in 1988 and for three months (not weeks) in connection with his second arrest.

Radwan also testified that he posted political writings only on the bulletin board at a university he attended in Egypt.  However, he stated in his affidavit that his writings were published in a magazine, and that this is how Egyptian officials learned of his oppositional views.  Radwan further testified that he was released from police custody in 1988 and in 2004 because his uncle, a police officer, was able to secure his release.  However, he stated in his application and affidavit that he was released from his first detention due to insufficient evidence against him, and that he was released from his

---

[7]     On appeal, the BIA concluded that the IJ's observations were supported by the record.

[8]     *Id.* at 250.

5

second detention because he was never criminally charged.  Radwan did not mention his uncle or that he had a relative working in the police department in either his application or affidavit, and informed the IJ of this for the first time at the final hearing.

Radwan also testified that his second arrest in 2004 was prompted by detectives hearing him talk about politics in a coffee shop and that he was arrested with two other people but did not know their names.  However, he stated in his application that he was arrested the second time for discussing politics with private students he tutored after school.  Radwan also stated in his application and affidavit that the police sent him threatening letters or messages prior to his first arrest.  However, Radwan never mentioned a threatening letter or message from the police when testifying about the circumstances of his first arrest.  Under our deferential standard of review and based on the inconsistencies in Radwan's testimony, application, and affidavit, the BIA did not err in affirming the IJ's adverse credibility determination.[9]

## B.

Radwan next argues that the BIA erred in concluding that the IJ provided him with a sufficient opportunity to provide corroborating evidence under *Abdulai v. Ashcroft*.[10]

---

[9]     We note that at the beginning of direct examination, the IJ specifically asked Radwan's counsel to elicit details so that he could better understand the chronology of events leading up to Radwan's detentions.

[10]     239 F.3d 542, 554 (3d Cir. 2001); *see also In re S-M-J-*, 21 I. & N. Dec. 722, 725 (BIA 1997) (explaining that it is reasonable to expect an applicant to corroborate facts that are central to their claim and easily verifiable, including letters from family members who remain in the applicant's home country).

*Abdulai* requires the IJ to (1) identify the facts reasonably expected to be corroborated, (2) inquire as to whether the applicant provided such corroborating evidence, and if he has not, (3) analyze whether the applicant adequately explained his failure to do so.[11]

In affirming the IJ's decision, the BIA explained that Radwan was given ample opportunity to identify available corroborating evidence regarding his affiliation with the Muslim Brotherhood and explain any discrepancies or gaps in the record at the final hearing. For instance, he testified that he was unable to obtain records relating to his arrest because the building they were stored in burned down, and that he could not obtain a letter of support from his sister because she was afraid to submit one. Radwan also testified that he had not tried to obtain other corroborating evidence, such as a letter of support from his Egyptian ex-wife regarding a subsequent attack on Radwan's home

---

[11] *Abdulai*, 239 F.3d at 554. We note a possible source of tension in the cases interpreting *Abdulai*, which states that the BIA may require "otherwise credible" applicants to provide corroborating evidence. *Id.* at 554. Though credibility and corroboration are separate inquiries, *see Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005), there is some conceptual overlap. Other panels have previously applied *Abdulai* even where, as here, there was an adverse credibility determination below. *E.g., Yilan Jiang v. Att'y Gen.*, 259 Fed. App'x 520, 522-23 (3d Cir. 2007) (not precedential) (applying *Abdulai* even though the BIA found the petitioner's testimony not credible); *see also Sandie v. Att'y Gen.*, 562 F.3d 246, 251 (3d Cir. 2009) (rejecting petitioner's argument that "the credibility determination is a necessary predicate to the corroboration determination"); *Kayembe v. Ashcroft*, 334 F.3d 231, 235 n.1 (3d Cir. 2003) (noting that an adverse credibility finding was based "in part due to lack of corroboration"). But a question arguably remains as to whether *Abdulai* is triggered in cases like this where there has been such a determination. Judge Jordan is of the view that *Abdulai*'s requirement to provide a corroboration opportunity is contingent on an applicant being "otherwise credible." 239 F.3d at 554.

7

because "nobody told [him] or directed [him] to this matter." A.R. 306.[12] The IJ also provided Radwan with an opportunity to submit a written closing argument, but that statement also failed to provide or identify any corroboration. Even though Radwan was able to offer at least a partial explanation as to the lack of documentary evidence, the BIA did not err in affirming the IJ's decision on this record, particularly in light of the adverse credibility determination below. At bottom, because Radwan was given adequate notice of the facts requiring corroboration before the IJ issued his final decision,[13] the BIA did not err in affirming the IJ's conclusion.

**IV.**

Radwan next challenges the BIA's conclusion that he failed to establish past harm or a well-founded fear of future persecution in his asylum application. To be eligible for asylum, Radwan must show that he "is unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular group, or political opinion." [14] An applicant can

---

[12] Radwan also testified that he did not obtain documents confirming his studies or teaching experience at Muslim Brotherhood schools for the same reason—that "nobody asked [him] to." A.R. 302.

[13] Radwan's final hearing at which he testified took place on June 26, 2018. His written closing statement was due to the IJ by July 11, 2018. The IJ's decision was not issued until August 13, 2018.

[14] 8 U.S.C. § 1101(a)(42); see 8 U.S.C. § 1158(b)(1)(A) (applicant must qualify as a "refugee").

establish asylum eligibility by demonstrating past persecution or a well-founded fear of future persecution,[15] which may include threats to life and confinement.[16]

The BIA explained that the IJ's adverse credibility determination was largely fatal to Radwan's asylum arguments, including his claim of past and future harm. Though past and future fear of persecution may be demonstrated through an applicant's testimony, the IJ reasonably concluded that Radwan's testimony was not credible.[17] Radwan testified that he had been harmed and feared future persecution in Egypt based on his affiliation with the Muslim Brotherhood, but failed to provide any other compelling evidence confirming his affiliation. For these reasons and in light of the adverse credibility determination, the BIA did not err in affirming the IJ's conclusion in this regard.[18]

## V.

Lastly, Radwan challenges the BIA's conclusion that he did not establish that it was more likely than not that he would be tortured if returned to Egypt, and his CAT

---

[15]     8 C.F.R. § 1208.13(a)–(b); *see Yu v. Att'y Gen.*, 513 F.3d 346, 348 (3d Cir. 2008) (explaining that a fear of future persecution must be supported by "objective evidence that persecution is a reasonable possibility") (quoting *Balasubramanrim v. I.N.S.*, 143 F.3d 157, 165 (3d Cir. 1998)).

[16]     *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 107 (3d Cir. 2010).

[17]     *See Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005).

[18]     To the extent Radwan argues that the BIA erred in denying his claim for withholding of removal, that claim also fails. The withholding-of-removal standard is higher than that for asylum, and an applicant who fails to meet his burden under the asylum framework "necessarily fails to meet the standard for withholding of removal." *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).

claim therefore failed.  An applicant is eligible for CAT protection if he can establish, through objective evidence, that it is "more likely than not" that he will be tortured if returned to his native country.[19]  To determine whether torture is likely to occur, the BIA must consider: (1) what is likely to happen to Radwan if he were removed to Egypt; and (2) whether that likely treatment amounts to the legal definition of torture.[20]

Here, the BIA affirmed the IJ's decision because the record showed that Radwan lived in Egypt for over 40 years without suffering serious physical harm,[21] and that he had not been meaningfully involved in political activities since he moved to the U.S., except for occasionally posting on Facebook.  The BIA further relied on the absence of credible evidence indicating that Radwan maintained contact with the Muslim Brotherhood or that the Egyptian government had any interest in harming Radwan since he relocated to the U.S.[22]  The BIA further explained that although   there is a pattern of persecution towards the Muslim Brotherhood in Egypt, Radwan nevertheless failed to

---

[19]  *Kamara v. Att'y Gen.*, 420 F.3d 202, 212–13 (3d Cir. 2005); *see Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir. 2003) (explaining that an adverse credibility ruling does not always mandate denial of CAT claims).

[20]  *See Zaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010) ("Torture is a term of art, and whether imprisonment, beating, and extortion are severe enough to rise to the level of torture is a legal question.").

[21]  Radwan testified first that he did not suffer any injuries and later that he suffered scratches on his face when police officers had pushed him.

[22]  Radwan testified, and included in his application and affidavit, that after arriving in the U.S., police had twice stormed his apartment in Egypt.  Due to the lack of corroborating evidence and the IJ's adverse credibility determination, that testimony does not compel a different result on appeal. *See* 8 C.F.R. § 1208.16(c)(2) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.").

provide any compelling evidence that he belonged to that group. On this record, we conclude that substantial evidence supports the BIA's decision that Radwan failed to show he was more likely than not to be tortured if returned to Egypt.

## VI.

The BIA reasonably adopted the IJ's determination that Radwan's testimony was not entirely credible and that he had sufficient opportunity to provide corroborating evidence or testify as to its availability. The BIA's determination that Radwan failed to establish past persecution or fear of future persecution, as well as a likelihood of torture, is also supported by substantial evidence. Accordingly, we will deny the petition for review and affirm the BIA's decision.