NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1474
_____

DOMINIC JEROME ALEXANDER,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA 1:A055-555-140)
Immigration Judge:  Pallavi S. Shirole
_____

Submitted Under Third Circuit LAR 34.1(a)
January 18, 2022

Before:  JORDAN, RESTREPO, and PORTER, *Circuit Judges*

(Filed February 4, 2022)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Petitioner Dominic Alexander seeks review of a decision of the Board of

Immigration Appeals ("BIA") dismissing his appeal after an Immigration Judge ("IJ")

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

denied his application for asylum, withholding of removal, and deferral of removal under the Convention Against Torture ("CAT"). We will deny his petition for review.

## I. Background

Alexander is a native and citizen of Jamaica who entered the United States in 2002. In 2015, he pled guilty in New Jersey state court to distributing a controlled dangerous substance within 1,000 feet of school property, in violation of N.J. Stat. Ann. § 2C:35-7, and to unlawful gun possession, in violation of N.J. Stat. Ann. § 2C:39-7. More specifically, Alexander admitted to possessing a semi-automatic handgun and marijuana (with an intent to distribute it) within 1,000 feet of a school. The indictment alleged, in a separate count dismissed as part of Alexander's plea deal, that the amount of marijuana exceeded 50 grams.

The government seeks to remove Alexander as a noncitizen convicted of a controlled substance violation, a firearms offense, and two crimes of moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(ii), (B)(i), (C). Alexander has conceded removability but has applied for asylum, withholding of removal, and protection under the CAT.

His application is based on two grounds. First, he claims that he would be persecuted and tortured in Jamaica because he is bisexual. To prove his risk, Alexander describes his past experiences as follows. In 2001, when he was fourteen years old, he had his first physical relationship with another boy. When that relationship was discovered, the dean of his school threatened to cane him, he was expelled, and his father disowned him. He then moved to his mother's house, but there he was assaulted by a group of youths in the neighborhood. They called him a derogatory name for a

2

homosexual, beat him with a stick, kicked him, and dragged him on the floor. He required several stitches on his face and could only eat through a straw during his recovery. He then went to his uncle's house, where he stayed for a few months before coming to the United States. Shortly after he left, some men came to his uncle's house looking for him and threatened to burn the house down if Alexander ever returned. In 2012, at a club in New York, he encountered two of the people who had beaten him back in Jamaica; they chased him, but he was able to get away. His mother's friends later told her to keep him in the United States.

Alexander's second ground for seeking relief is based on his family's political ties to the Jamaican Labor Party ("JLP"). Two of his uncles were murdered for being JLP supporters. He said that, if he returned to Jamaica, he would be easily recognized as a member of his family because of his light skin and his family's business interests. He was never personally involved in any political activity while living in Jamaica, because he was too young.

An IJ denied Alexander's application.[1] Noting that the indictment and judgment of conviction indicated that Alexander had possessed over 50 grams of marijuana and unlawfully possessed a handgun near a public school, she exercised her discretion to

---

[1] The IJ had earlier denied Alexander's application, but the BIA then remanded the matter for the IJ to reconsider parts of her decision in light of our intervening opinion in *Rosa v. Attorney General*, 950 F.3d 67 (3d Cir. 2020), which dealt with the same New Jersey criminal statute. In the remand order, the BIA instructed the IJ to conduct further fact-finding in support of her decision on the particularly serious crime and to reconsider her CAT decision. She did so.

determine that his conviction was a "particularly serious crime," which barred asylum and withholding of removal. She also held that he was not eligible for protection under the CAT. She determined that his past experiences did not arise to the level of torture and that the evidence did not establish that he was more likely than not to be tortured, particularly given that the JLP had risen to power in recent years and conditions for bisexuals in Jamaica had seen some improvements. Alexander appealed the IJ's denial to the BIA.

The BIA upheld the IJ's findings and dismissed the appeal. It rejected Alexander's argument that the IJ had failed to consider certain evidence, concluding that the record indicated that the IJ had indeed considered all the evidence and that any error was harmless. Alexander then filed the pending petition for review.

## II.    Discussion[2]

### A.    Asylum and Withholding of Removal

Alexander first challenges the BIA's determination that he was convicted of a particularly serious crime. A particularly serious crime "disqualifies [an alien] from all

---

[2] The BIA had jurisdiction over Alexander's appeals pursuant to 8 C.F.R. § 1003.1(b)(3). Because its second decision dismissing the appeal was a final order of removal, we have jurisdiction under 8 U.S.C. § 1252(a)(1). "Where … the BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions, we review both decisions." *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 246 (3d Cir. 2021) (internal quotation marks omitted). But "where the BIA makes a merits decision without adopting or invoking the IJ's reasoning, we review only the BIA's decision." *Id.* at 246-47.

Our jurisdiction to review the BIA's final order is limited to "constitutional claims [and] questions of law[.]" 8 U.S.C. § 1252(a)(2)(C), (D). We may not review factual challenges to the agency's denial of asylum or withholding of removal. *Nasrallah v.*

forms of relief from removal except deferral of removal under the CAT." *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 250 (3d Cir. 2021).

"The BIA has broad discretion to decide whether an offense is a particularly serious crime." *Id.* (internal quotation marks omitted). When exercising that discretion, the agency follows a two-step process. It first decides whether the elements of a crime "'potentially bring the offense within the ambit of a particularly serious crime'"; if so, it then "consider[s] 'all reliable information'" to determine whether the alien's specific offense was particularly serious. *Luziga v. Att'y Gen.*, 937 F.3d 244, 252-53 (3d Cir. 2019) (quoting *In re N-A-M-*, 24 I&N Dec. 336, 342 (B.I.A. 2007)).

The IJ and the BIA committed no legal error in following that two-step framework to determine that Alexander's offense was a particularly serious crime. As to the first prong, N.J. Stat. Ann. § 2C:35-7 has the following elements: "(1) possession of a controlled dangerous substance, (2) with the purposeful or knowing intent to distribute the substance, and (3) within 1000 feet of any school property." *State v. Gregory*, 106 A.3d 1207, 1210 (N.J. 2015). Alexander does not seriously dispute the BIA's explanation that "[d]rug offenses are often considered particularly serious, as are crimes

*Barr*, 140 S. Ct. 1683, 1690 (2020). We review questions of law de novo. *Sunuwar*, 989 F.3d at 247.

Because a CAT order is separate and distinct from a final order of removal, we may review factual challenges to the denial of protection under the CAT. *Nasrallah*, 140 S. Ct. at 1690-92. Our standard of review for factual challenges is the "highly deferential" substantial-evidence standard, where "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id*. at 1692 (quoting 8 U.S.C. § 1252(b)(4)(B)). We review questions of law de novo. *Sunuwar*, 989 F.3d at 247.

that endanger minors or induce them to criminal activity." (A.R. at 5.) Instead, he argues that the BIA should have analyzed the "least culpable conduct" under the statute, which could involve possession of drugs with an intent to give them away for free. (Opening Br. at 24.) Leaving aside the oddity of arguing that giving drugs to minors is not particularly serious, there is no requirement for the BIA to conduct a least-culpable-conduct analysis. The question is whether the crime's elements "*potentially* bring the crime into a category of particularly serious crimes[,]" not whether they always do so. *Luziga*, 937 F.3d at 253 (emphasis added). The agency did not err in concluding that N.J. Stat. Ann. § 2C:35-7 potentially falls within the ambit of a particularly serious crime.

With respect to the second prong, the BIA agreed with the IJ's determination that Alexander's specific conduct was particularly serious, noting that "[he] was in possession of over 50 grams of marijuana, in an area designated for minors, while also unlawfully possessing a handgun, which is a deadly weapon[.]" (A.R. at 5.) Alexander raises two procedural challenges to that conclusion. First, he argues that the agency failed to consider the purportedly mitigating facts from the plea transcript. But we do not have jurisdiction to review the agency's failure to address or give weight to the plea transcript. *See Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007) ("[A]rguments such as that an [IJ] or the BIA incorrectly weighed evidence [or] failed to consider evidence … are not questions of law under § 1252(a)(2)(D)."). And "[t]he [agency] is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped [Alexander's] claims." *Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d. Cir. 2002) (internal quotation marks and citation omitted). The BIA did consider the plea

6

transcript, and it concluded that the transcript "[did] not mitigate the findings of the [IJ]." (A.R. at 5.)

Second, Alexander argues that the IJ and the BIA improperly relied on the indictment's dismissed claims to ascertain the amount of marijuana he possessed at the time of his offense. As discussed above, the agency may consider "all reliable information[,] … including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *Luziga*, 937 F.3d at 253 (alterations in original). The agency here was not precluded from considering the full indictment, which contained reliable information, even if it fell outside the ultimate record of conviction. *Cf. Sunuwar*, 989 F.3d at 249-50 (holding that it was reasonable for the agency to credit an affidavit of probable cause).

The IJ and the BIA did not err in determining that Alexander was convicted of a particularly serious crime and was thus ineligible for asylum and withholding of removal.

### B. Protection Under the CAT

Alexander next challenges the agency's determination that he was not entitled to protection under the CAT. To receive deferral of removal under the CAT, a noncitizen must establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017). The IJ begins that evaluation by addressing the factual question of what is likely to happen to the petitioner if removed; and the legal question of whether what is likely to happen meets the definition of torture. *Id.* at 516 (quoting *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010)). For an act to constitute torture under the CAT, it must "caus[e]

7

severe physical or mental pain or suffering[.]" *Id.* at 515; *see also* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment."). To meet his burden, a noncitizen may present evidence of past torture he endured, "evidence of gross, flagrant or mass violations of human rights within the country of removal," and other relevant information regarding country conditions. *Id.* § 1208.16(c)(3).

Alexander presented evidence of his past suffering and of country conditions, but the evidence does not establish that he is more likely than not to be tortured upon returning to Jamaica. As for past torture, we agree with the BIA that "a single physical beating by teens that required stitches but no hospitalization or lasting physical effect, coupled with threats to an uncle, a perceived sighting in New York many years ago, and advice from family friends to remain in the United States, is insufficient to demonstrate past torture, which requires extreme pain or suffering." (A.R. at 7.) Alexander's past experiences are not to be treated lightly, but they do not constitute torture and do not establish a likelihood of future torture.

We also agree that the country-conditions evidence does not establish a likelihood of future torture. The agency found that Alexander's bisexuality did not make him likely to be attacked by a mob, criminally prosecuted for same-sex intimacy, or left unprotected by the police. It also found that he would not be subjected to political violence, particularly given that the JLP had risen to power in the years since his uncles were

killed. Those factual findings are supported by substantial evidence. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).[3]

Alexander again challenges the agency's process, arguing that it failed to consider certain relevant evidence. He is correct that the IJ must consider "all evidence relevant to the possibility of future torture[.]" 8 C.F.R. § 1208.16(c)(3). But "[t]he IJ and BIA need not 'discuss every piece of evidence mentioned by'" an alien seeking CAT protection. *Green v. Att'y Gen.*, 694 F.3d 503, 509 (3d Cir. 2012) (quoting *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010)). All that is required is for the IJ to demonstrate that she considered all the evidence of record. *Id.*

Alexander argues that the IJ ignored the articles and expert report that he submitted and instead relied only on reports from the U.S. State Department. But the record does not show that the IJ disregarded that other evidence.[4] She stated at the outset that "[a]ll of the evidence has been considered, regardless of whether it is specifically mentioned in this decision[.]" (A.R. at 303.) She cited Alexander's submissions for the

---

[3] Although the country conditions evidence "suggests individuals of the LGBTI community are victims of discrimination, which can sometimes be violent" (A.R. at 113), that general possibility of violent discrimination is "insufficient to demonstrate that it is more likely than not that a particular civilian, in this case [Alexander], will be tortured[.]" *Tarrawally v. Ashcroft*, 338 F.3d 180, 188 (3d Cir. 2003). As the BIA found, "Jamaica, like many nations, continues to mistreat bisexuals[,] but the situation has improved, and the record does not reflect the likelihood of future torture for [Alexander] is more likely than not for him, specifically, or those like him." (A.R. at 7.)

[4] In his reply brief, Alexander presents additional reports detailing discrimination against the LGBT community in Jamaica. We may not consider that evidence here. *See* 8 U.S.C. § 1252(b)(4)(A) (stating that a petition for review shall be decided "only on the administrative record on which the order of removal is based").

9

proposition that there is "general mistreatment of homosexual and bisexual individuals in Jamaica." (A.R. at 113). She included a long footnote to explain that the State Department's country reports "are the 'most appropriate' and 'perhaps the best resource[s]' for determining the current political situation in a particular country." (A.R. at 114 (citations omitted)). That footnote further indicates that she considered, but gave less weight to, the other evidence of country conditions that Alexander submitted.[5]

## III. Conclusion

For the foregoing reasons, the IJ and BIA did not err in denying Alexander's application for asylum, withholding of removal, and protection under the CAT. We will deny the petition for review.

---

[5] Alexander also takes issue with the IJ's failure to cite the expert report that he submitted on remand. To the extent that the IJ's second decision does not indicate that she considered the expert report, any such error was harmless because "it is highly probable that the error did not affect the outcome of the case." *Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011). The expert, who did not know Alexander personally, merely provided more general information about the treatment of the LBGT community in Jamaica. This information was duplicative of all the country-conditions evidence that the IJ had already considered and probably would not have changed the outcome. Indeed, the BIA expressly considered the expert report on appeal and concluded that it would not have changed anything.