**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1515
_____

HUBER ADELMAR CAMAJA-CEBALLOS,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A216-544-889)
Immigration Judge: Mirlande Tadal
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 14, 2025

Before: SHWARTZ, MATEY, and MONTGOMERY-REEVES, *Circuit Judges*.

(Opinion filed: January 20, 2026)
_____

OPINION*
_____

MONTGOMERY-REEVES, *Circuit Judge*.

Huber Adelmar Camaja-Ceballos seeks review of the Board of Immigration

Appeals' (the "BIA") final order of removal. Camaja-Ceballos argues the BIA erred in

denying his application for asylum, withholding of removal, and relief under the

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Convention Against Torture ("CAT"). For the reasons explained below, we will deny the petition.

## I.     BACKGROUND

Camaja-Ceballos, a Guatemalan national, unlawfully entered the United States in 2018. In 2020, the Department of Homeland Security commenced removal proceedings against him. Camaja-Ceballos conceded removability and applied for asylum, withholding of removal, and relief under CAT. In his declaration, he claimed that he was targeted in Guatemala by unidentified gang members bent on recruitment efforts and robbery. But at the hearing, he claimed he was persecuted on account of his religion and membership in a particular social group.

In his declaration, Camaja-Ceballos claimed that when he was 14 years old, two gang members threatened him because he refused to work for their gang, and the principal of his school offered no help. Approximately two years later, two gang members stole his motor scooter because he would not "work for them." Certified Administrative Record (hereinafter "CAR __") 301. Camaja-Ceballos and his grandfather reported the incident to the police, who declined to help because he and his grandfather were "from a farm." *Id.* at 302. About two months after the scooter incident, unidentified gang members killed Camaja-Ceballos's dog while he attended religious services; the attackers left a note saying, "we'll be back for you." *Id.* Another time, gang members bruised his face and slashed his left knee, requiring a dozen stitches and forcing him to recuperate in bed for a week. Camaja-Ceballos then relocated to another city, where gang members "robbed [him]

2

and threatened [him] with a firearm." *Id.* So he went into hiding for more than two months and then entered the United States.[1]

On March 17, 2021, Camaja-Ceballos received a hearing on his claims. Although his counsel argued that he was in the "particular social group" of "Indigenous Guatemalan children[] whose government doesn't provide protection," *id.* at 216, Camaja-Ceballos testified repeatedly that he was attacked for promoting his religion. He claimed, for example, that when gang members threatened him the first time, they told him that he "should stop preaching the word of God to the young people because they wanted to recruit them, themselves." *Id.* at 200. After gang members killed his dog, Camaja-Ceballos said, police refused to help because he was Indigenous and "a Christian." *Id.* at 207. Then, describing the incident when gang members slashed his knee, Camaja-Ceballos claimed gang members told him to "stop predicating the word of God, otherwise they would kill [him]." *Id.* at 208.

The Immigration Judge (the "IJ") noticed that Camaja-Ceballos's declaration and evidentiary materials did not mention these statements. Addressing Camaja-Ceballos

---

[1] Camaja-Ceballos supported his application with several letters: from the mayor of his village (also his grandfather), corroborating the gang-related threats he faced and the murder of his dog; from the principal of his school, stating that he withdrew "due to problems with a group of gangs and threats from them," CAR 256; the principal of another school he attended, attesting that he fled to the United States because "a criminal gang persecuted him too much and [made] many death threats," *id.* at 260; and from a doctor, stating that in February 2017 he sustained several injuries and received twelve stitches on his left knee. These letters did not aver that Camaja-Ceballos's attackers, or agents of the Guatemalan government, mistreated Camaja-Ceballos because of his religion.

directly, the IJ noted that Camaja-Ceballos's attendance at a religious service was "the only reference you gave in your . . . declaration about your, your church or your religious activities in Guatemala" and asked him to "explain this." *Id.* at 236. Camaja-Ceballos responded, "Yes, I guess that's the only page that mentions the religion." *Id.*

The IJ found Camaja-Ceballos's testimony not credible because Camaja-Ceballos mentioned anti-Christian animus for the first time at the hearing. The IJ then denied Camaja-Ceballos's claims for asylum, withholding of removal, and relief under CAT. The BIA affirmed. It held that the IJ's adverse credibility finding was supported by substantial evidence, that the IJ afforded Camaja-Ceballos an adequate opportunity to address his inconsistent testimony, and that any error by the IJ would not have been prejudicial. The BIA also found that Camaja-Ceballos had not demonstrated membership in a cognizable "particular social group" because he was not a child "at the time of the hearing." *Id.* at 4. Camaja-Ceballos petitioned this Court for review of the BIA's decision.

## II.    DISCUSSION[2]

Camaja-Ceballos challenges the BIA's order on several grounds. "Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ." *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009) (citation omitted). We review the IJ's decision "to the extent the BIA substantially relied on that opinion." *B.C. v. Att'y Gen.*, 12 F.4th 306, 313 (3d Cir. 2021) (quoting *Camara*, 580 F.3d at 201) (quotation marks omitted). We

---

[2] The BIA had jurisdiction to hear Camaja-Ceballos's appeal under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's decision.

4

review both the BIA's and the IJ's decisions if "the BIA 'affirmed and partially reiterated' the IJ's determinations." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (quoting *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009)). We review legal questions de novo and factual findings for substantial evidence, deferring to them "unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006), *as amended* (Sept. 29, 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Because we may "review only the grounds upon which the BIA denied relief," *Saban-Cach v. Att'y Gen.*, 58 F.4th 716, 724 n.23 (3d Cir. 2023), we address, in turn, each of the BIA's grounds for decision. We will review first the grounds related to Camaja-Ceballos's claims for asylum and withholding of removal, and then address the grounds related to CAT.

### A. Asylum and Withholding of Removal

An undocumented person may qualify for asylum if he has suffered, or has a well-founded fear of suffering, "persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Under this standard, the person need not "prove that future persecution is 'more likely than not' to occur." *Doe v. Att'y Gen.*, 956 F.3d 135, 151 (3d Cir. 2020) (quoting *Lukwago v. Ashcroft*, 329 F.3d 157, 177 (3d Cir. 2003)). "Even a ten percent chance will do."[3] *Id.*

---

[3] An alien may demonstrate a well-founded fear without past persecution, or may use past persecution to generate a rebuttable presumption of a well-founded fear. *See* 8 C.F.R. § 1208.13(b)(1); *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 341 (3d Cir. 2008).

(citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987)).  To obtain withholding of removal, however, an undocumented person "must show that such persecution is 'more likely than not' to occur." *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 348 (3d Cir. 2008) (quoting *Lukwago*, 329 F.3d at 182).  "The alien bears the burden of proving eligibility for asylum [and withholding of removal] through credible evidence." *Huang v. Att'y Gen.*, 620 F.3d 372, 380 (3d Cir. 2010); 8 C.F.R. §§ 1208.13(a), 208.16(b).

The BIA affirmed the IJ's denial of asylum and withholding of removal on four grounds.  First, the BIA determined that the IJ's adverse credibility finding was supported by substantial evidence.  Second, the BIA rejected Camaja-Ceballos's argument that the IJ did not give him a sufficient opportunity to explain the inconsistencies that, to the IJ, rendered his testimony incredible.  Third, the BIA found that, even assuming that the IJ did not seek explanations for every inconsistency, Camaja-Ceballos did not demonstrate that he suffered prejudice.  Fourth, and finally, the BIA held that Camaja-Ceballos had not established membership in a particular social group.  Camaja-Ceballos challenges all these grounds for decision, but each fails.

First, the adverse credibility finding.  The BIA, like the IJ, has "wide latitude . . . [to] consider[] all pertinent factors and weigh[] those factors as [it] deem[ed] appropriate." *Alimbaev v. Att'y Gen.*, 872 F.3d 188, 196 (3d Cir. 2017) (cleaned up).  Indeed, the trier of fact may render an adverse credibility finding "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii).  "As a result, 'only the most extraordinary circumstances justify overturning an adverse credibility determination.'" *Sunuwar v. Att'y Gen.*, 989 F.3d 239,

6

250–51 (3d Cir. 2021) (quoting *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005) (cleaned up)).

This is not such an extraordinary case. Camaja-Ceballos applied for asylum based in part on his religion, and thus bore the burden to show "that he was targeted for mistreatment on account of" that "statutorily-protected ground[]." *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Doe*, 956 F.3d at 141). Camaja-Ceballos mentioned the anti-Christian animus of his alleged persecutors repeatedly at his hearing, but he left those details out of the application and declaration that he certified were "true, accurate, and complete." CAR 191. Given his burden, that was more than "[a] trivial inconsistency." *Sunuwar*, 989 F.3d at 251 n.7. Camaja-Ceballos's discussion of anti-Christian animus for the first time at his hearing thus provided substantial evidence for an adverse credibility finding. *See id.* at 251–52 (affirming adverse credibility determination where petitioner did not discuss key event in asylum application); *Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004) (affirming adverse credibility determination where petitioner omitted key event from declaration despite "appreciati[ng] [its] relevance").[4]

Camaja-Ceballos argues that his testimony and declaration were logically compatible. The declaration averred that gang members harmed him because he interfered

---

[4] We note that the IJ and BIA supported their adverse credibility findings with "specific, cogent reasons" reflecting careful comparison of Camaja-Ceballos's live testimony and written materials. *Lin v. Att'y Gen.*, 543 F.3d 114, 119 (3d Cir. 2008) (cleaned up), *abrogated in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023).

7

with their recruitment, and his testimony implied that his preaching was the mechanism of interference. But we may not vacate the BIA's decision merely because "there is more than one way to view the record." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 688 (3d Cir. 2015). To overcome "an adverse credibility finding," Camaja-Ceballos "must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Sunuwar*, 989 F.3d at 247 (quoting *Pan v. Holder*, 737 F.3d 921, 930 (4th Cir. 2013)). He has not made that showing here.

Second, we agree with the BIA that the IJ gave Camaja-Ceballos an adequate opportunity to explain his inconsistent testimony. Camaja-Ceballos is correct that the IJ's colloquy with him could have been clearer. But it was clear enough to "identify[] the alleged inconsistencies . . . and giv[e] [Camaja-Ceballos] an opportunity to address them." *Ming Shi Xue v. BIA*, 439 F.3d 111, 121 (2d Cir. 2006). The IJ told Camaja-Ceballos that he "claimed [during the hearing] that [he was] preaching the word of God," identified the lone reference in Camaja-Ceballos's "declaration about [his] church or . . . religious activities in Guatemala," and asked, "How do you explain this? What is your explanation?" CAR 236. Those questions, and their preface, suggest that the IJ wanted to learn why there

was a discrepancy between Camaja-Ceballos's written and oral testimony. And Camaja-Ceballos acknowledged that there was only one "page that mentions the religion." *Id.*[5]

Third, as the BIA noted, even assuming that the IJ did not seek explanations for every inconsistency, Camaja-Ceballos did not demonstrate that he suffered prejudice. The record demonstrates that the IJ addressed the most material discrepancy, and that is sufficient to support an adverse credibility finding. *See* 8 U.S.C. § 1229a(c)(4)(C) (permitting "any . . . inconsistency" to justify an adverse credibility finding).

Fourth and finally, we address the BIA's conclusion that Camaja-Ceballos did not prove his membership in a particular social group. Camaja-Ceballos claimed he was in the particular social group of "Indigenous Guatemalan children[] whose government doesn't provide protection," which did not require a demonstration of religious persecution. *Id.* at 216. The BIA held that Camaja-Ceballos could not be a member of this particular social group because he "was 19 years old at the time of the hearing." CAR at 4. As Camaja-Ceballos notes, he was a minor child at the time of his alleged persecution. But that does not save Camaja-Ceballos because his testimony and documentary evidence fail to show that gang members targeted him because he was an Indigenous child. Again, substantial

---

[5] In his reply brief, Camaja-Ceballos argues for the first time that the IJ's questions and demeanor at the hearing constituted judicial misconduct that prevented him from testifying credibly. Because Camaja-Ceballos did not raise this procedural due process claim before the BIA, the claim is unexhausted and beyond the scope of this Court's review. *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005) (concluding that, because petitioner's "procedural due process claims . . . could have been argued before the BIA, . . . [the petitioner's] failure to do so is . . . fatal to our jurisdiction over this petition").

evidence indicates that Camaja-Ceballos's attackers identified him as a threat to their recruitment of local residents.

Thus, we have no reason to disturb the BIA's conclusion that Camaja-Ceballos did not qualify for asylum. And, because he did not qualify for asylum, Camaja-Ceballos "necessarily fail[ed] to demonstrate a 'clear probability' of persecution, as required for withholding of removal." *Blanco*, 967 F.3d at 310 (quoting *Toure v. Att'y Gen.*, 443 F.3d 310, 317 (3d Cir. 2006)); *see also Gomez-Zuluaga*, 527 F.3d at 348–49 ("[A]n applicant who cannot meet the standard for asylum will necessarily be unable to meet the standard for withholding of removal.").

## B.    CAT

"To establish eligibility for a mandatory grant of withholding or deferral of removal under CAT, an applicant must prove 'that it is more likely than not that he would be tortured if removed to the proposed country of removal.'" *Blanco*, 967 F.3d at 315 (alterations omitted) (quoting 8 C.F.R. § 1208.16(c)(2)). Torture entails "an act causing severe physical or mental pain or suffering," which, among other things, is done "by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim." *Id.* at 316 (quoting *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005)). The BIA determined that Camaja-Ceballos was not entitled to relief under CAT because his "testimony regarding past harm was not credible and no independent evidence supports his claim[]." CAR 5. But whatever the credibility of Camaja-Ceballos's evidence and testimony, the record does not indicate that Camaja-Ceballos was, or might

10

be, tortured. We thus agree with the BIA that substantial evidence supported the denial of Camaja-Ceballos's CAT claim.

## III.    CONCLUSION

For the foregoing reasons, we will deny the petition for review.